McGinn v. State.

## BARNEY McGINN v. STATE OF NEBRASKA.

FILED NOVEMBER 19, 1895.  No. 6854.

1. **Constitutional Law:** CALENDAR MONTH. The term "calendar month" is used in section 24, article 3, of the constitution in the sense in which it was understood prior to the adoption of that instrument.

2. **Calendar Month.** The term "calendar month," whether employed in statutes or contracts, and not appearing to have been used in a different sense, denotes a period terminating with the day of the succeeding month numerically corresponding to the day of its beginning, less one. If there be no corresponding day of the succeeding month, it terminates with the last day thereof.

3. **Statutes:** TIME. The provision of section 895 of the Code of Civil Procedure, for the exclusion of the first day in computing the time within which an act is to be done, was intended to establish a uniform rule, applicable alike to the construction of statutes and to matters of practice.

4. ———: TIME OF GOING INTO EFFECT: PENALTY FOR MURDER. The penalty for murder in the first degree was, by section 3 of the Criminal Code, as originally adopted, death by hanging. By an act approved April 8, 1893, passed without an emergency clause, said section was so amended as to provide that the penalty for the crime therein denounced shall be death by hanging, or imprisonment for life, in the discretion of the jury. The legislature of 1893, having adjourned on the 8th day of April of that year, *held*, that said amendment took effect on the 9th day of July following.

5. **Criminal Law:** CONVICTION: REVIEW: FORMER JEOPARDY: WAIVER. When the defendant in a criminal prosecution is adjudged guilty of the crime charged, and subsequently procures a reversal of the judgment of conviction on account of error by the trial court, he will be held to have waived his right to object to further prosecution on the ground that he has been once put in jeopardy.

6. ———: SENTENCE: IMPRISONMENT. While the practice of confining persons convicted of capital offenses from the date of sentence until the day of execution has prevailed from time imme-

morial, such confinement is not a part of the penalty, although
a necessary incident thereof, and the power of the court in that
regard does not rest upon any positive provision of statute.

ERROR to the district court for Douglas county.    Tried
below before SCOTT, J.

The facts are stated in the opinion.

*Mahoney, Minahan & Smyth* and *Estelle & Hoeppner*, for
plaintiff in error:

If the plaintiff in error is guilty of murder as charged in
the information, the crime was committed July 29, 1893,
and he should have been tried under the laws then in
force.    By chapter 44, Session Laws, 1893, the jury, in
finding a conviction of murder in the first degree, must fix
the penalty and say by their verdict whether the defendant
shall suffer death or imprisonment for life.    This statute
was approved April 8, 1893, and the legislature adjourned
the same day.    The court, in refusing to permit the jury
to fix the penalty, committed an error.    The law formerly
in force prescribed the death penalty as the only punish-
ment for murder in the first degree, and a verdict thereun-
der finding the accused guilty is illegal and will not sup-
port a sentence, where the alleged crime was committed
after the new law went into effect.    Under the constitu-
tional provision that no act shall take effect until three
calendar months after the adjournment of the legislature,
the act requiring the jury to fix the penalty for murder in
the first degree took effect July 9, 1893, before the alleged
crime had been committed. (Constitution, sec. 24, art. 3;
Session Laws, 1893, ch. 44; Cooley, Constitutional Limi-
tations [6th ed.], 187; *Glore v. Hare,* 4 Neb., 131; *Migotti
v. Colvill,* 4 L. R., C. P. D. [Eng.], 233; *Lacon v. Hooper,*
6 T. R. [Eng.], 224; Bishop, Contracts, sec. 1339; *Ellis'
Case,* 8 N. J. Law, 286; *Loring v. Halling,* 15 Johns.
[N. Y.], 119; *Stackhouse v. Halsey,* 3 Johns. Ch. [N. Y.],

74; *Redmond v. Glover*, Dud. [Ga.], 107; *Gross v. Fowler'* 21 Cal., 393; *Savings & Loan Society v. Thompson*, 32 Cal., 347; *Beacon v. State*, 22 Fla., 46; *Brown v. Williams*, 34 Neb., 376; *Heaston v. Cincinnati & F. W. R. Co.*, 16 Ind., 275; *Snyder v. Warren*, 2 Cow. [N. Y.], 518; *Parsons v. Chamberlin*, 4 Wend. [N. Y.], 512; *French v. English*, 7 Neb., 124; *Roesink v. Barnett*, 8 Neb., 146; *Guaranty Trust Co. v. Green Cove S. & M. R. Co.*, 139 U. S., 137; *People v. Ulrich*, 2 Abb. Pr. [N.Y.], 28; *Commonwealth v. Maxwell*, 27 Pa. St., 444; *Lester v. Garland*, 15 Ves. [Eng.], 248; *Hardy v. Ryle*, 9 Bar. Cr. [Eng.], 603; *Castle v. Burditt*, 3 T. R. [Eng.], 623; *Young v. Higgon*, 6 M. & W. [Eng.], 49; *Watson v. Pears*, 2 Campb. [Eng.], 294; *South Staffordshire Tramway Co. v. Sickness & Accident Assurance Association*, 1 Q. B., 1891 [Eng.], 402; *Radcliffe v. Bartholomew*, 1 Q. B., 1892 [Eng.], 161.)

On December 29, 1893, the court pronounced sentence on plaintiff in error, by the terms of which he was to be confined in the county jail in solitary confinement until April 6, 1894, and then hanged. Under that sentence he was taken to the jail and kept in solitary confinement until the following day, when he was brought into court, the sentence vacated and a new sentence pronounced, fixing his execution at a later date, and his imprisonment at solitary confinement for a different period. The second sentence was absolutely without authority, for the reason that the punishment prescribed by the first being partly borne, the power of the court over it was exhausted. Under the constitutional guaranty that a man shall not be twice put in jeopardy for the same offense, the court had no power or authority to impose another and different sentence. (*In re Fuller*, 34 Neb., 581; *People v. Kelly*, 44 N. W. Rep. [Mich.], 615; *People v. Meservey*, 42 N. W. Rep. [Mich.], 1133; *Ex parte Lange*, 18 Wall. [U. S.], 163; *In re Jones*, 35 Neb., 499; *State v. Gray*, 37 N. J. Law, 368.)

In support of the argument that the first sentence is er-

roneous and that the plaintiff in error should be discharged, reference was made to the following authorities: Criminal Code, sec. 503; *Rex v. Ellis,* 5 Barn. & C. [Eng.], 395; *Rex v. Bourne,* 7 Ad. & El. [Eng.], 58; *Shepherd v. Commonwealth,* 2 Met. [Mass.], 419; *Stevens v. Commonwealth,* 4 Met. [Mass.], 360; *Christian v. Commonwealth,* 5 Met. [Mass.], 530; *People v. Taylor,* 3 Denio [N. Y.], 91; *Daniels v. Commonwealth,* 7 Pa. St., 371; *Beale v. Commonwealth,* 25 Pa. St., 11; *Commonwealth v. Ellis,* 11 Mass., 465; *Sheperd v. People,* 25 N. Y., 406; *State v. Gray,* 37 N. J. Law, 368; *McDonald v. State,* 45 Md., 90; *Benedict v. State,* 12 Wis., 313; *Peglow v. State,* 12 Wis., 534; *Williams v. State,* 18 O. St., 46; *Picket v. State,* 22 O. St., 405; *State v. Shuchardt,* 18 Neb., 454; *Conklin v. State,* 25 Neb., 784; *Jackson v. State,* 15 So. Rep. [Ala.], 351.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state:

Prior to the act approved April 8, 1893, the penalty for murder in the first degree was death. (Criminal Code, 1891, sec. 3.)

By the provisions of the act approved April 8, 1893, the legislature amended section 3 of the Criminal Code so that the penalty should be death or imprisonment for life, in the discretion of the jury. (Criminal Code, 1893, sec. 3.)

Section 24, article 3, of the constitution provides: "No act shall take effect until three calendar months after the adjournment of the session at which it passed, unless in case of emergency." The precise question presented is a construction of the meaning of the term, "three calendar months." The construction as applied to written constitutions should give effect to the intent of the people adopting it, so as to give meaning if possible to every word and phrase. (Cooley, Constitutional Law, 72; *State v. Bacon,* 6 Neb. 297.)

McGinn v. State.

In 1850 the parliament of England defined the word "month" to mean calendar month. (13 and 14 Vic., c. 21.)

"Calendar month" has been defined one of the months of the year as enumerated in the calendar, without reference to the number of days it may contain. (Black, Law Dictionary; Abbott, Law Dictionary; Webster, Dictionary; 13 Am. & Eng. Ency. Law, 712; Encyclopædia Britannica.)

"Calendar month" is one of the divisions of time as January, February, March. (Rapalje, Dictionary; Sedgwick, Statutory and Constitutional Law, 358, 372; *Roesink v. Barnett*, 8 Neb., 146; *Opinion of the Judges*, 5 Neb., 566; *State v. Babcock*, 22 Neb., 37.)

A week is a definite period of time, commencing on Sunday and ending on Saturday. (*Steinbe v. Bell*, 12 Abb. Pr., n. s. [N. Y.], 172; *State v. Yellow Jacket Silver Mining Co.*, 5 Nev., 430.)

For a review of the authorities relating to the meaning of the word "month," see *Guaranty Trust & Safe Deposit Co. v. Buddington*, 12 L. R. A. [Fla.], 771.

In 1891 the term "three calendar months" was construed adversely to the contention of plaintiff in error by the attorney general. His construction has since been followed by the department of state. The construction given to a statute by those charged with the duty of executing it should not be overruled without strong reason. (*United States v. Moore*, 95 U. S., 760; *Brown v. United States*, 113 U. S., 568; *Hahn v. United States*, 107 U. S., 402; *Cooper Mfg. Co. v. Ferguson*, 113 U. S., 727; *Stewart v. Laird*, 1 Cranch [U. S.], 299; *Peabody v. Stark*, 16 Wall. [U. S.], 240; *Ellis v. Glaser*, 61 N. W. Rep. [Mich], 649; *Westbrook v. Miller*, 56 Mich., 151; *Malonny v. Mahar*, 1 Mich., 26; *Britton v. Ferry*, 14 Mich., 53; *Continental Improvement Co. v. Phelps*, 47 Mich., 299; *Pease v. Peck*, 18 How. [U. S.], 565; *Coutant v. People*, 11 Wend. [N. Y.], 511; *Jackson v. Washington County*, 34 Neb., 688; *State v. Smith*, 35 Neb., 24.)

Section 503, Criminal Code, provides that at least one
hundred days shall intervene between the sentence and
the day of execution. Where an error has been made in
computing this time, the court has a right to set aside the
judgment and resentence the prisoner. The imprisonment
pending the date of execution, though solitary confine-
ment, is no part of the sentence of the law, but merely in-
cidental to the keeping of the prisoner. In case a mistake
in the time has been made the court may set aside the sen-
tence and resentence the prisoner. (*State v. Shea,* 95 Mo.,
85; *Lacy v. State,* 15 Wis., 15; *State v. Shaw,* 23 Ia., 316;
*State v. Nicholson,* 14 La. Ann., 798; *Daniels v. Common-
wealth,* 7 Pa. St., 371; *King v. Kenworthy,* 1 Barn. &
C. [Eng.], 711; *Benedict v. State,* 12 Wis., 348; *Beal v.
Commonwealth,* 25 Pa. St., 11; *People v. Riley,* 48 Cal.,
549; *State v. Child,* 42 Kan., 611; *State v. Redman,* 17 Ia.,
329; *State v. Knouse,* 33 Ia., 365; *State v. Tweedy,* 11 Ia.,
350; *People v. Olwell,* 28 Cal., 456; *Sutcliffe v. State,* 18 O.,
469; *Dodge v. People,* 4 Neb., 220; *Bohanan v. State,* 18
Neb., 57.)

Judgment for a longer term than that authorized by
law may be corrected and affirmed where the record dis-
closes no other error. (*Vaughan v. State,* 83 Ala., 55; *Web-
ster v. Commonwealth,* 5 Cush. [Mass.], 407; Chitty, Crimi-
nal Law, 722; *Dodge v. People,* 4 Neb., 226; *In re Jones,*
35 Neb., 499; *State v. Treszevant,* 20 S. Car., 363; *State
v. Hoyt,* 47 Conn., 542.)

In *Kinsler v. Territory,* 1 Wyo. Ter., 112, the prisoner
was sentenced to be hanged. On the day following the
sentence the court discovered an informality therein, va-
cated the sentence, and pronounced a new one. It was
held that there was no error in the proceedings.

The court has a right to vacate or modify its judgment
in a criminal as well as in a civil case during the term; and
the plea of being once in jeopardy will not avail defendant
upon the theory that he has served part of the punishment

imposed upon him. (2 Coke, Littleton, p. 260a; *Regina v. Fitzgerald*, 1 Salk. [Eng.], 401; *Turner v. Barnaby*, 2 Salk. [Eng.], 567*; *King v. Price*, 6 East [Eng.], 327; *Darling v. Gurney*, 2 Dowl. [Eng.], 101; *Tilden v. Johnson*, 6 Cush. [Mass.], 354; *Fay v. Wenzell*, 8 Cush. [Mass.], 315; *Stickney v. Davis*, 17 Pick. [Mass.], 169; Wharton, Criminal Pleading & Practice, sec. 913; *Commonwealth v. Foster*, 122 Mass., 323; *Brown v. Rice*, 57 Me., 57; *Jobe v. State*, 28 Ga., 235; *Lee v. State*, 32 O. St., 115; *Basset v. United States*, 9 Wall. [U. S.], 38; *Miller v. Finkle*, 1 Park. Cr. Cas. [N. Y.], 374; *Wright v. State*, 5 Ind., 527.)

Where the verdict is insufficient and does not properly respond to the indictment, and the defendant appeals, the judgment may be reversed and the cause remanded for a new trial. (*Marshall v. Commonwealth*, 5 Gratt. [Va.], 663; *State v. Moran*, 7 Ia., 236; *Wilson v. State*, 20 O., 26; *State v. Sutton*, 4 Gill [Md.], 494; *People v. Olcott*, 2 Johns. Cas. [N. Y.], 301; *State v. Callendine*, 8 Ia., 288; *Dodge v. People*, 4 Neb., 220; *State v. Knouse*, 33 Ia., 365; *State v. Redman*, 17 Ia., 329.)

Where there is error in the record the plaintiff in error should not be discharged but the case should be remanded for trial. (*State v. Schuchardt*, 18 Neb., 454; *Conklin v. State*, 25 Neb., 784; *Jackson v. State*, 15 So. Rep. [Ala.], 351.)

The instructions of the court correctly define malice. (*Milton v. State*, 6 Neb., 143; *Carr v. State*, 23 Neb., 749.)

The weight to be given evidence is a question entirely for the jury to determine. (*Seling v. State*, 18 Neb., 548; *Whitman v. State*, 42 Neb., 841; *Palmer v. People*, 4 Neb., 68; *Monroe v. State*, 10 Neb., 448; Bishop, New Criminal Procedure, sec. 1274.)

It is incompetent to show that the character and disposition of the deceased was quarrelsome where there was no evidence to establish a quarrel at the time of the homicide. (*Keener v. State*, 18 Ga., 194; *Quesenberry v. State*, 3 Stew.

32

& Port. [Ala.], 309; *Doyal v. State,* 70 Ga., 134; *Gardner v. State,* 90 Ga., 312; Wharton, Criminal Evidence, sec. 84; *People v. Lamb,* 2 Keyes [N. Y.], 360.)

It is within the discretion of the court to limit the number of witnesses upon the question of the character of the prisoner. (*Mathews v. State,* 19 Neb., 330; 1 Greenleaf, Evidence, sec. 65; Bishop, New Criminal Procedure, sec. 1136; *Mergentheim v. State,* 107 Ind., 567; *State v. Whitton,* 68 Mo., 91; *Bunnell v. Butler,* 23 Conn., 65; *Commonwealth v. Webster,* 5 Cush. [Mass.], 324; *Wesley v. State,* 37 Miss., 327; *People v. Sweeney,* 133 N. Y., 609; *Coleman v. State,* 59 Miss., 490; *Jackson v. State,* 76 Ga., 562.)

Post, J.

The plaintiff in error Barney McGinn was at the September, 1893, term of the district court for Douglas county adjudged guilty of the crime of murder in the first degree, which judgment has been removed into this court for review by means of a petition in error, to which further reference will hereafter be made. The prisoner is by the information charged with feloniously and maliciously wounding, with intent to kill, one Edward McKenna on the 29th day of July, 1893, from which he, the said McKenna, died two days later, on the 31st day of July. It is unnecessary to examine at length the evidence adduced in support of the allegations of the information. It is sufficient for the purpose of this investigation that the dates of the assault and the death of the deceased were proved as charged by the state. The jury, at the close of the trial, returned a general verdict of murder in the first degree without assessing the penalty therefor, to which exception was taken both by way of motion for a new trial and in arrest of judgment, and which suggests the first questions presented for our consideration.

Prior to the act approved April 8, 1893, entitled "An

act to amend section No. three (3) of the Criminal Code,"
etc. (Session Laws, 1893, p. 385, ch. 44), the only penalty
for murder in the first degree was death by hanging;
but by section 1 of the act above mentioned section 3 of
the Criminal Code was so amended as to read thus: "And
upon conviction thereof shall suffer death or shall be
imprisoned in the penitentiary during life, in the discre-
tion of the jury." By section 2 of said act the original
section is repealed with a saving clause in the following
language: "*Provided, however*, That such repeal shall not
be construed to apply to any offenses committed prior to
the taking effect of this act, nor shall the same affect any
convictions or prosecutions held under said original sec-
tion." (Session Laws, 1893, p. 386, sec. 2, ch. 44.) The
contention of counsel for the prisoner is that the act of
1893 took effect previous to the date charged in the infor-
mation; hence the district court should have required the
jury to fix the penalty, and that it accordingly erred in re-
ceiving the verdict over their objections. The constitu-
tional provision which bears upon the subject is found in
section 24 of article 3, as follows: "No act shall take ef-
fect until three calendar months after the adjournment of
the session at which it passed, unless in case of emergency,
to be expressed in the preamble or body of the act, the leg-
islature shall, by a vote of two-thirds of all the members
elected to each house, otherwise direct." The twenty-third
session of the legislature adjourned on the day the act in
question was approved, to-wit, April 8, 1893; therefore
the precise question presented is, when did the constitu-
tional period of three calendar months after the adjourn-
ment of that session terminate? The term "month" at
common law, whether employed in statutes or contracts,
unless a different meaning was apparent from the context,
was held to mean a lunar month of twenty-eight days, except
in ecclesiastical affairs, and as applicable to commercial
paper. (Chase's Blackstone, Commentaries, 141*; Bishop,

Contracts, sec. 1339; *Migotti v. Colvill,* 4 L. R., C. P. D.
[Eng.], 233; *Lacon v. Hooper,* 6 T. R. [Eng.], 224;
*Churchill v. Merchants Bank,* 19 Pick. [Mass.], 532;
*Guaranty Trust & Safe Deposit Co. v. Green Cove S. & M.
R. Co.,* 139 U. S. 137.) In this country many of the earlier
cases follow the rule of the common law. (*Vide Ellis' Case,*
8 N. J. Law, 286; *Loring v. Halling,* 15 Johns. [N. Y.],
19; *Stackhouse v. Halsey,* 3 Johns. Ch. [N. Y.], 74; *Red-
mond v. Glover,* Dud. [Ga.], 107.) Later cases have, as a
rule, construed the word "month," when it does not appear
to have been used in a different sense, to mean a calendar
month. (*Glore v. Hare,* 4 Neb., 132; *Brown v. Williams,*
34 Neb., 376, and cases cited.) In order to avoid the con-
fusion arising from conflicting constructions of the term,
thirty-five states and territories have by legislative enact-
ment declared the term "month," when used without
qualification, to mean a calendar month; and in England
the common law rule was abolished by statute in 1850.
(13 and 14 Vic., c. 21.)

It is said by counsel for the prisoner, referring to the
facts of this case, that "the authorities, without exception,
support our contention that three calendar months should
be computed as commencing to run on the 9th day of
April and terminating on the 8th day of July," and as
that proposition presents the issue to be determined, we will
proceed to examine some of the cases cited as bearing upon
the subject. In *Glore v. Hare, supra,* it was held that an
appeal taken on the 22d day of August from a judgment
rendered February 21 is not within the six months pre-
scribed by the act governing appeals to this court. In
*Brown v. Williams, supra,* a note executed on the 2d day
of January was held within the exception contained in sec-
tion 44 (Compiled Statutes, ch. 6) of the assignment law,
being a debt created within nine calendar months previous
to a general assignment made on the 2d day of October
following. In *Snyder v. Warren,* 2 Cow. [N. Y.], 518, fif-

teen calendar months were computed from August 15, 1822, to November 15, 1823. In *McGuire v. Ulrich*, 2 Abb. Pr. [N. Y.], 28, the statute required one month's notice to quit before suit brought. The notice was given April 18, and it was held that a calendar month had intervened before the commencement of the action, to-wit, May 25. In *Guaranty Trust & Safe Deposit Co. v. Green Cove S. & M. R. Co.*, *supra*, the first publication of notice was made August 9, the answer day named being December 1, following. After computing the time at 114 days, the court say the time is "more than four lunar months, but eight days less than four calendar months."

We now come to a class of cases having a more direct bearing upon the question at issue. In *Commonwealth v. Maxwell*, 3 Casey [Pa.], 444, the statute provided that in case of vacancy in the office of judge of common pleas, a successor should be chosen "at the first general election which shall happen more than three calendar months after the vacancy shall occur." The presiding judge died July 15, 1856, and the general election for that year occurred October 14. It was held that the statutory period had not intervened, and that the respondent, who was chosen at the election held on the day last mentioned, was not entitled to the office. In *Minard v. Burtis*, 83 Wis., 267, we observe this language: "It is also said that the notice was not given one calendar month before the action was commenced; that, having been given April 4, it would not be complete until June 1. We cannot adopt this view. If given the proper number of days before action brought, as contained in the calendar month in which it was given, as in this case, it was sufficient." The leading case of *Lester v. Garland*, 15 Ves. Ch. [Eng.], 248, arose under the will of Sir John Lester, providing that the testator's sister, Sarah Pointer, should within six calendar months after his death give security that she would not at any time intermarry with A, or that in case she did so inter-

marry, that she would within six calendar months there-
after pay certain bequests therein made. The testator died
January 12 and the security given July 12 was held to sat-
isfy the requirements of the will, Grant, M. R., saying:
"The question is whether the day of Sir John Lester's
death is to be included in the six months or to be ex-
cluded. If the day is included she did not, if it is ex-
cluded she did, give the required security before the end of
the last day of the six months; and therefore did comply
sufficiently with the conditions." *Hardy v. Ryle,* 9 Barn.
& C. [Eng.], 603, was an action against a justice of the
peace for illegally detaining the plaintiff after the expiration
of his term of imprisonment. The defendant relied upon a
statute of limitations which required the action to be brought
"within six calendar months after the act committed."
The court, after a review of the authorities, say: "The
question * * * depends upon this: whether the 14th
day of December, the last day of the plaintiff's imprison-
ment, is to be included or excluded. * * * If it is to be
included, the action was not commenced in time; if it is to
be excluded, it was." *South Stratfordshire Tramway Co. v.
Sickness & Accident Assurance Association,* 1 Q. B. Div.,
1891 [Eng.], 402, was an action on a policy of insurance
for twelve calendar months, from November 24, 1888. It
is said that November 25, 1887, was the first and Novem-
ber 24, 1888, the last day covered by the policy. And to
the same effect are *Young v. Higgon,* 6 M. & W. [Eng.],
49; *Watson v. Pears,* 2 Campb. [Eng.], 294; *Ratcliffe v.
Bartholomew,* 1 Q. B. Div., 1892 [Eng.], 161; *Gross v.
Fowler,* 21 Cal., 393; *Savings & Loan Society v. Thomp-
son,* 32 Cal., 347. But perhaps the most satisfactory of
reported cases is *Migotti v. Colvill,* 4 L. R., C. P. D. [Eng.],
233, which was an action against the governor of the Mid-
dlesex House of Correction for false imprisonment. It
appears that the plaintiff was on the 31st day of October
sentenced to imprisonment for the period of one calendar

month, and to the further term of fourteen days, to commence on the expiration of the first sentence.   The decision turned upon the question when the first sentence terminated, and Lord Denman, after an exhaustive examination of the subject, concludes as follows: "On the whole, I am of opinion that a sentence of imprisonment for one calendar month passed on any given day of any given month is to be held to begin to run from the first moment of that day and to expire upon arriving at the first moment of the corresponding day in the succeeding month.   If there be no such corresponding day by reason of the succeeding month not having so many days as in the preceding month, then, by analogy to the law established in the case of bills of exchange, I think the calendar month should be held to have expired at the last moment of its last day."   The other judges, Cotton, Bramwell, and Brett, concur in separate opinions, the latter using the following language: "I am of opinion that the term a 'calendar month' is a legal and technical term, and that we are bound to interpret its legal and technical meaning.   The meaning of the phrase is that in computing time by calendar months the time must be reckoned by looking at the calendar and not by counting days, and that one calendar month's imprisonment is to be calculated from the day of imprisonment to the day numerically corresponding to that day in the following month, less one."   It is true the precise question was not presented in every case cited, as the same result would in some instances have been reached by extending the period to the end of the month; but they are nevertheless instructive as tending to sustain the assertion of counsel that in no case, except in *Minard v. Burtis, supra*, was the rule applied by the district court contended for.   The natural and necessary deduction from the authorities above cited is that the term "calendar month," as used in the constitution, had, prior to the adoption of that instrument in 1875, received a definite interpretation, and is to be com-

puted not by counting days but by looking at the calendar,
and terminates with the day numerically corresponding to
the day of its commencement, less one, in the following
month; and such is evidently the sense in which it is em-
ployed in the constitution.

The authorities are not, as will be observed, harmonious
upon the question whether the first day—in this instance,
the day of the adjournment of the legislature—is to be in-
cluded in the prescribed period. That question is, how-
ever, not an open one in this state. Indeed, it is clear that
section 895 of the Code of Civil Procedure, providing
that "the time within which an act is to be done as herein
provided shall be computed by excluding the first day and
including the last," was intended to establish a uniform
rule, applicable to the construction of statutes as well as to
matters of practice. (*Monell v. Terwilliger*, 8 Neb., 360;
*McGavock v. Pollack*, 13 Neb., 535; *Spencer v. Haug*, 45
Minn., 231.) It follows that the period of three calendar
months after the adjournment of the legislature of 1893
terminated at midnight of the 8th day of July of that
year. It follows, too, that the act amendatory of the
Criminal Code relating to the penalty for murder in the
first degree was the law of the state on the 29th day of
July and should have governed in the trial of this cause.
The attorney general, however, relies upon a practical con-
struction of the provision under consideration adverse to
the view above stated. That contention has for its basis
the opinion of Hon. George H. Hastings, attorney general,
in response to an inquiry addressed to him by the secretary
of state on the 29th day of April, 1891. We have ex-
amined with care the opinion referred to, but are unable
to accept the conclusion of the learned author, for reasons
already appearing. A practical exposition of a constitu-
tional provision by the officers charged with its execution
is, as said by us in *State v. Holcomb*, 46 Neb., 88, entitled
to great weight, and will, in case of doubt or ambiguity,

especially when long acquiesced in, generally be adopted by the courts; but that rule can have no application to the case at bar.  There is not alone an absence of evidence tending to prove that the construction of the attorney general was acquiesced in by the executive officers or the people of the state, but it is a fact, verified by the records of this court and of which we are required to take notice, that the question has, ever since the date of the opinion mentioned, been the subject of judicial controversy.

Of the many questions presented during the able and instructive arguments with which we have been favored in this case it is necessary to notice two only in addition to those already examined, and which are both included in the proposition that it is our duty to discharge the plaintiff in error instead of remanding the cause for trial *de novo*. It is asserted by counsel that the plaintiff has been once in jeopardy within the meaning of the bill of rights, and that the trial then had is a bar to further prosecution for the crime charged.  If the question were an open one to be determined by the application of fundamental principles, the argument of counsel could not be lightly disregarded.  Indeed, we can conceive of no course of reasoning which does not lead logically to the conclusion contended for.  As said by Mr. Bishop (1 Bishop, Criminal Law, 1044): "The court is the power that brings the jeopardy upon him [the prisoner], and when the constitution declares that this power shall not put him in jeopardy twice, it is mockery to say that it may bring him into as many jeopardies as it will, provided it violates the law each time."  But the author, at sections 998 and 999 of the same volume, admits the contrary to be the firmly established rule.  To attempt an examination of the cases holding that the accused, in a criminal prosecution, by procuring a reversal of the judgment of conviction, waives his right to object to a second trial on the ground that he has been once put in jeopardy, would be a work of supererogation.  It is sufficient that

the question has been definitely determined by this court in *Bohanan v. State*, 18 Neb., 57. (See, also, *United States v. Harman*, 68 Fed. Rep., 472.)

The other contention, that the prisoner should be discharged, is based upon the following facts: On the 29th day of December, 1893, the district court, on overruling the motion for a new trial, pronounced its judgment by which the prisoner was to bè executed on the 6th day of April following, and in the meantime remain in solitary confinement in the jail of Douglas county. On the next day, to-wit, December 30, he was again brought into court and an order made setting aside the judgment previously entered and a second sentence pronounced by which April 13, 1894, was named as the day of execution. The second sentence, like the first, provided that the prisoner should, from the date thereof until the day of his execution, be confined in the jail of Douglas county. It is argued that the second sentence is not irregular merely, but absolutely void, for the reason that the punishment prescribed by the first had been suffered in part by the prisoner, and the power of the court over the subject thereby exhausted. In the brief of counsel for the prisoner his position is thus tersely stated: "The solitary confinement imposed upon the prisoner was as much a part of his sentence as was his execution. The only authority that the sheriff had to imprison him during that day and until called into court the following day was the sentence pronounced on the 29th of December. All previous commitments had expired. Their purpose had been served. The judgment and sentence of the court were the only authority on which the imprisonment could be legally justified from the 29th to the 30th of December, and the imprisonment of plaintiff in error under that sentence from the 29th to the 30th of December was the infliction of a part of the punishment covered by the sentence and a part, too, that the court had legal authority to impose." That argument, although plausible, is

not convincing.    The first sentence was, it is conceded, irregular, the time intervening between the date thereof and the day of execution being less than one hundred days, as prescribed by law (Criminal Code, sec. 503); but having reached the conclusion that the verdict was also irregular and should have been set aside on the motion of the prisoner, the power of the district court to correct its judgments in prosecutions for felonies will not now be examined.

This court in *Re Fuller*, 34 Neb., 581, held that the term of imprisonment of one sentenced to the penitentiary runs from the date of sentence and not from the date of his delivery to the warden; but that was a construction of section 518 of the Criminal Code, and not involving the question now under consideration.    It is by section 547 provided, in substance, that the death penalty shall be inflicted in the immediate vicinity of the jail in an inclosure to be prepared under the direction of the sheriff.    Although the confinement of the prisoner from the time of sentence until the day of his execution is a practice which has prevailed from time immemorial as a necessary incident to the judgment, it is, strictly speaking, no part thereof, and the power of the court in that regard does not rest upon any positive provision of statute.    The precise question appears to have been seldom raised and the cases cited cannot be said to sustain the proposition contended for.    In *People v. Meservey*, 76 Mich., 223, as well as *People v. Kelly*, 79 Mich., 320, the sentence was imprisonment in the penitentiary, and in accordance with the rule adopted by this court in Fuller's case, *supra*, was held to have commenced on the day it was imposed.    In *Re Tyson*, 13 Colo., 482, the statute of 1889 provided that all persons convicted of crimes punishable by death should be delivered to the warden of the penitentiary and by him kept in solitary confinement until the day of execution.    The statute in force at the time of the homicide, like ours, provided merely that every person convicted of murder in the first degree should suffer death.    Tyson

having been convicted of murder in the first degree, was delivered to the warden under the act of 1889, whereupon he sought his discharge by means of a writ of *habeas corpus,* alleging that the provision for solitary confinement was in the nature of an *ex post facto* law. In disposing of that contention the court say: "Aside from this, the defendant is imprisoned for the purpose only that he may be produced at the time set for his execution, the confinement being no part of the punishment, but simply an incident connected therewith, referable to penal administration as its primary object." The same statute was before the supreme court of the United States in *Medley, Petitioner,* 134 U. S., 160, where it was held, but without controverting the proposition that the imprisonment is not a part of the sentence proper, that the provision therein for solitary confinement was in the nature of an *ex post facto* law as to crimes previously committed. We are satisfied with the reasoning of the Colorado court and do not hesitate to adopt the conclusion reached by it, so far as applicable to the facts of the case before us.

Although it has been our endeavor to examine the merits of the question presented, we must not be understood as conceding it to be an open one at this time. We have, on the other hand, no reason to doubt the soundness of the practice long prevailing in this state by which one committed to the penitentiary is, by procuring a reversal of the judgment of conviction, considered to have waived his right to insist that the partial execution of the sentence is a bar to further prosecution; and such, while not expressly decided, logically follows from the rule asserted in *Bohanan v. State.* The judgment is reversed and the cause remanded for further proceedings by the district court.

REVERSED.