## OMAHA WATER CO. v. SCHAMEL.

(Circuit Court of Appeals, Eighth Circuit.   August 27, 1906.)

### No. 2,068.

1. NEGLIGENCE—WHEN QUESTION OF FACT FOR JURY.

The question whether it was an act of negligence for an employé of defendant to use lighted matches in producing a light in the basement of a building near the bottom of an elevator shaft, and in close proximity to a large amount of highly combustible material, was one of fact for the jury.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 277–353.]

2. SAME—EVIDENCE—SUFFICIENCY—CIRCUMSTANTIAL EVIDENCE.

Where a fire started in combustible material in the basement of a building almost immediately after an employé of defendant admittedly lighted matches near such combustible material, a finding that the fire was caused by such matches may be sustained by circumstantial evidence tending to exclude any other cause.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, § 272.]

3. SAME — CONTRIBUTORY NEGLIGENCE — CHOICE OF ALTERNATIVE INVOLVING RISK.

Where one is placed by the negligent act of another in a position of such imminent peril that he is compelled to choose upon the instant between two hazards, and he makes such a choice as persons of ordinary prudence, placed in a like situation, would be likely to make, and injury results, the fact that if he had chosen the other hazard he would or might have escaped injury does not establish contributory negligence, nor relieve the other whose negligent act caused the perilous situation from responsibility for the injury.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 99, 100.]

4. SAME.

Plaintiff's intestate, with a number of other women, was in a room on the third floor of a building, when it took fire in the basement through the alleged negligence of defendant's employé; the fire passing swiftly up an elevator shaft and catching the walls of the hall, which were of inflammable material. There was a stairway in the hall but flames came through the door leading from the room to the hall when opened. Some of the women ran through such flames and escaped by means of the stairs, but were more or less severely burned. Others jumped or dropped from the windows; some without loss of life, and others being killed. Among the latter was plaintiff's intestate. *Held*, that she was not chargeable as

matter of law with contributory negligence in seeking such method of escape from the building.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 99, 100.]

5. DEATH—ACTION FOR WRONGFUL DEATH—DAMAGES RESULTING TO NEXT OF KIN.

In an action for wrongful death, under Comp. St. Neb. 1901, § 2504, which authorizes the recovery of pecuniary damages resulting to the next of kin, where there was some evidence that deceased earned money with which she aided her married daughters, such evidence was properly submitted to the jury to be considered in the assessment of damages.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 83, 112, 113].

6. ADOPTION—JUDICIAL PROCEEDINGS—NOTICE UNDER NEBRASKA STATUTE.

In computing time, under the provision of Comp. St. Neb. 1901, § 6322a, requiring that notice of hearing on a petition for the adoption of a child shall be published "at least 10 days prior to said day of hearing," under the rule of decision in Nebraska, the day of last publication is to be excluded, and the day of the hearing included, so that notice of a hearing on the 18th of the month was sufficient under the statute where it was published the required number of times, and the last publication was on the 8th.

7. SAME.

Comp. St. Neb. 1901, § 6322a, relating to proceedings for the adoption of children, authorizes the court to direct notice to be given to all parties interested by publication, "provided further that in the event that the parents or either of them reside within the state and personal service can be had upon them, such service shall in all such cases be had upon such parent or parents." The record in an adoption proceeding showed that the petition was granted and judgment entered on service by publication; that the child was at the time two years old, and both the sworn petition, and the written consent of the person in whose exclusive custody and control the child had been since her birth, contained statements that her parents were unknown to the persons making such statements. *Held*, that such statements constituted evidence tending to show that the parents could not be personally served, sufficient to sustain the judgment when collaterally attacked.

8. SAME—CONSENT—PERSONS AUTHORIZED TO GIVE.

Comp. St. Neb. 1901, § 6318, relating to the adoption of minor children, specifies those who may consent to such adoption, among them being "any person, corporation, or association that shall have had the lawful custody or control of any minor child for the period of six months last preceding for the support of which neither parent shall without just cause or fault have contributed anything whatever during said period." A written consent to an adoption stated substantially that the child was about two years old, and had been abandoned at birth by its parents, which abandonment had continued since that time; that the person giving such consent had assumed and retained the care and control of the child, and had no knowledge as to who its parents were. *Held*, that such statements were sufficient to sustain a finding by the court, as against a collateral attack, that the consent was given by one authorized to give it under the statute.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adoption, §§ 7–10.]

9. DEATH—ACTION FOR WRONGFUL DEATH—DAMAGES TO INFANT CHILD.

In an action for wrongful death, based on Comp. St. Neb. 1901, §§ 2503, 2504, which authorize the recovery of the pecuniary damages to the next of kin, where the evidence showed that deceased, who was a woman, had an adopted daughter three years old, to whom she had been a good mother, an instruction was proper which permitted the jury to take into considera-

tion as an element of damages the loss to the child of a mother's care, nurture, training, and instruction.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 115, 119.]

10. WRIT OF ERROR—AMOUNT OF RECOVERY—CONCLUSIVENESS OF VERDICT.

In the federal appellate courts, where no error of law appears upon the record, a verdict is conclusive in respect to the amount of damages.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, §§ 3944–3947.]

In Error to the Circuit Court of the United States for the District of Nebraska.

R. S. Hall and J. H. McCulloch, for plaintiff in error.
W. H. De France, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This was an action by an administrator, on behalf of the next of kin, to recover from the Omaha Water Company damages for the death of his intestate, Mrs. Annie Schamel, alleged to have been caused by the negligence of that company. The plaintiff obtained a verdict and judgment which the defendant seeks to have reversed because of errors said to have occurred upon the trial.

Mrs. Schamel and others were holding a committee meeting in a third-story room of a building in Omaha, called the "Patterson Block," when a fire, originating in the basement, was quickly communicated to the upper stories through an elevator shaft, and, in an effort to escape, she leaped or dropped from a window and was killed. The court's refusal to direct a verdict for the defendant makes it necessary to consider whether there was any evidence from which the jury could properly find that the fire was caused by any of the negligent acts charged against the defendant, which included that of using matches as a means of producing an artificial light in the basement of the building near the bottom of the elevator shaft in circumstances where ordinary care required the use of a lantern or other inclosed light. Upon this point the testimony of the plaintiff tended to show these facts: The defendant was engaged in supplying water to its patrons, including the occupants of the Patterson block. The water used by each patron was measured by a meter placed upon his premises by the defendant, and one of its employés, B. A. Karr, was required periodically to inspect these meters and to take note of the amount of water used. In the discharge of this duty Karr went to the Patterson Block, and proceeded to inspect two meters located in the basement. They were close to the bottom of the elevator shaft and at and about them was much highly combustible material, including many light wooden frames and crates covered with cheesecloth. The character of this material was known and appreciated by Karr. The basement was not well lighted, and he used matches to produce a better light while he cleared away some of the material and inspected the meters. He then left the building and in a very brief time

the fire started in the frames and crates at the place where the matches were used. The testimony for the plaintiff also tended to exclude any other origin of the fire than this use of lighted matches. Karr was called as a witness for the defendant and admitted the presence of the combustible material and the use of matches, but stated that he used a lesser number than was otherwise indicated, and that he used them and disposed of the remnants in a manner calculated to prevent any communication of fire from them.

The questions presented by this evidence were properly left to the determination of the jury. The use of lighted matches in the circumstances described, considering the disastrous consequences which would almost certainly flow from igniting so much highly combustible material in such a place, if not an act which all reasonable men in the exercise of an impartial judgment would pronounce negligent, was yet attended with such a degree of danger as to make it a question of fact for the jury, rather than of law for the court, whether the exercise of ordinary care forbade the use of matches and required the use of a lantern or other protected light, which would have been attended with no danger. The evidence indicating the almost immediate occurrence of the fire at the place at which the matches were lighted, and tending to exclude any other reasonable theory respecting its origin, also tended persuasively to show that an ember from a burning match must have **fallen** in the combustible material and have caused the fire, and was, therefore, in conflict with the testimony of Karr. It was not essential that the connection between the use of the matches and the fire be traced by the testimony of an eyewitness; it could equally be shown by proof that the surrounding facts and circumstances were such that the fire must have originated in that way. It is said that the case should have been taken from the jury because Mrs. Schamel leaped or dropped from a window and was killed when she could have descended a stairway in safety. There was evidence tending to show that when the members of the committee were apprised of the fire they were instantly confronted with the necessity of choosing between two modes of escape—one by going into the hall and then down a stairway, and the other by leaping or dropping from a window. Each was apparently attended with great peril, and was altogether uncertain of accomplishment. The hall, the walls of which were boards covered with cheesecloth and paper, was afire and a stream of burning gas was issuing from a pipe near the head of the stairway, a leaden joint in which had been melted by the flames ascending the elevator shaft. When the door from the committee room to the hall was opened the flames at once entered the room. Some of its occupants made their way through the flames in the hall to the stairway and escaped, but not without being severely burned. Others leaped or dropped from the windows; some without loss of life and others being killed. The imminence of the peril from which Mrs. Schamel attempted to escape is illustrated by the fact that her face, neck, hands, hair, and clothing were badly burned. The rule applicable to such a state of facts is this: Where one is

placed, by the negligent act of another, in a position of such imminent peril that he is compelled to choose, upon the instant, between two hazards, and he makes such a choice as persons of ordinary prudence, placed in a like situation, would be likely to make, and injury results, the fact that if he had chosen the other hazard he would or might have escaped injury does not establish contributory negligence or relieve the other, whose negligent act caused the perilous situation, from responsibility for the injury. Lincoln Rapid Transit Co. v. Nichols, 37 Neb. 332, 336, 55 N. W. 872, 20 L. R. A. 853; Stokes v. Saltonstall, 13 Pet. 181, 193, 10 L. Ed. 115; Wilson v. Northern Pacific R. R. Co., 26 Minn. 278, 3 N. W. 333. The evidence certainly did not warrant the court in saying, as matter of law, that persons of ordinary prudence would not have been likely to do just as Mrs. Schamel did, if placed in a like situation.

Complaint is made of the court's refusal to instruct the jury that there was no evidence of any pecuniary injury to two married daughters. The ruling was right. While the evidence upon this point was somewhat meager, it sufficiently disclosed that the deceased had been in the habit of earning money and extending pecuniary assistance to these daughters to justify the submission to the jury of the question whether there was a reasonable expectation that a continuance of her life would be of pecuniary benefit to them. If there was, it was cut off by the death, and was an element to be considered in the assessment of the damages. Comp. St. Neb. 1901, § 2504; Johnson v. Missouri Pacific Ry. Co., 18 Neb. 690, 700, 26 N. W. 347. One of the next of kin whose pecuniary injury the jury was charged to consider was an adopted daughter, and it is said that this was error because the adoption was void. The entire record and files in the adoption proceeding were produced in evidence, and show that it was had in the county court of Douglas county, Neb., under a statute of that state. Comp. St. 1901, §§ 6317–6322f. The objections urged against the adoption are (1) that notice of the hearing was not published for the requisite period; (2) that the required number of days did not intervene between the completion of the publication and the time fixed for the hearing; (3) that personal notice was not given to the parents, or either of them, and facts dispensing therewith were not shown; and (4) that written consent to the adoption was not given by any one authorized to consent. The first three objections are grounded upon section 6322a, which reads:

"Upon the filing of said petition said court shall fix a time for hearing the same, which shall be at least fourteen days subsequent to the filing thereof. Said court may require notice of said hearing to be given to all parties interested by personal service or by publication; provided, that it shall not be necessary to give notice of said hearing to the said minor child to be adopted, unless said minor child shall be over the age of fourteen years, if notice shall be given by publication, said notice shall be published at least four consecutive weeks in some newspaper in general circulation in said county, which publication shall be at least ten days prior to said day of hearing. Provided further, that in the event that the parents or either of them reside within the state, and personal service can be had upon them, that such service shall in all such cases, be had upon such parent or parents."

The petition was filed March 14th, and the court thereupon entered an order fixing April 18th as the time for hearing the same, and directing that notice be given to all parties in interest by publication. The notice was published in four successive issues of a weekly newspaper, dated, respectively, March 18th, March 25th, April 1st, and April 8th. Tested by the rule of decision in Nebraska, the notice was published "four consecutive weeks" and was complete on the day of the last issue. Davis v. Huston, 15 Neb. 28, 16 N. W. 820. The publication being complete April 8th, was this "at least ten days prior to" April 18th, the day fixed for the hearing? The answer is given in White v. German Insurance Co., 15 Neb. 660, 20 N. W. 30, where, in construing a general statute (Comp. St. 1901, § 6416) relating to the computation of time, and in applying it to a statute requiring service to be had "at least three days before the time of appearance" (Code Civ. Proc. § 911) it was held that service upon June 26th, when the time of appearance was June 29th was good; the general statute having the effect of excluding the day of service and including the day of appearance. See, also, McGinn v. State, 46 Neb. 427, 440, 65 N. W. 46, 30 L. R. A. 450, 50 Am. St. Rep. 617. This ruling, when applied to the case before us, requires that the day on which the publication was completed be excluded in the computation, and the day fixed for the hearing included, and when this is done the publication is seen to have been 10 days prior to the day of hearing. The statute, although at first clothing the court with a discretion to say whether the notice of the hearing shall be by personal service or by publication, qualifies or restrains this by the provision, "in the event that the parents or either of them reside within the state, and personal service can be had upon them, such service shall in all cases be had upon such parent or parents." The record in the adoption proceeding does not disclose that either parent resided within the state, or that personal service could have been had upon either, but it does disclose that the minor was then but two years old; that Mrs. Schamel and her husband, in their petition for adoption, which was sworn to by both, stated that the names, residence, and identity of the parents were unknown to them; and that Frances P. Clark, whose written consent to the adoption accompanied the petition, declared therein that she had had exclusive, actual, and lawful custody and control of the minor from the time of its birth, and that its parents were unknown to her. The judgment recites that witnesses were examined at the hearing and finds that notice by publication was "duly given," and that "the statements set forth in said consent and petition are true." The claim now made is, not that these statements were any of them untrue, or that either parent resided in the state or could have been personally served, but only that the statements had no legal tendency to prove that the parents could not be personally served, and therefore did not authorize the court to render judgment upon notice by publication alone. We think the contention is not well founded. Apart from the consideration that the evidence presented upon the hearing was not preserved or re-

quired to be preserved, and apart from any presumptions which possibly might be indulged in respect of that evidence, we are of opinion that the statements in the petition and in the written consent tended to prove that personal service could not be had. It hardly needs statement that personal service upon a child's parents, as such, it not possible when its parentage is unknown, and yet such was the situation which these statements tended to disclose. They were that neither the one in whose exclusive, actual and lawful custody and control the child had been from the time of her birth, nor those who were seeking to adopt her, knew who were her parents; and, of course, the child, being only two years old, did not know. While it may be doubted whether more persuasive evidence of unknown parentage, and, therefore, of inability to make personal service, could have been presented, it is sufficient for us to hold, as we do, that there was some evidence of that character, because that is sufficient when the question is raised upon a collateral attack.

The remaining objection to the adoption is that Frances P. Clark, who gave written consent thereto, was not shown to possess authority under the statute to give consent. The statute makes written consent executed in a prescribed manner by a person authorized to consent a prerequisite to the judgment of adoption and with much particularity specifies those who may consent (sections 6318, 6322), among them being:

"Any person, corporation or association that shall have had the lawful custody or control of any minor child for the period of six months last preceding, for the support of which neither parent shall without just cause or fault have contributed anything whatever during said period."

The consent of Frances P. Clark stated, inter alia:

"That said Leone Louise Schamel is a minor of the age of about 2 years, having been born on March 15, 1896, at Omaha, Neb. That your petitioner, ever since the birth of said minor, has had the exclusive and actual and lawful custody and control of said minor, and, during all of said period of time neither of the parents of said minor has contributed anything whatever to its support, and that the failure to so contribute has been without just cause on their part. That the parents of said minor are unknown to your petitioner."

The court found that these statements were true, and that consent to the adoption was "executed as required by the statute," which means, not merely that the consent was executed in the manner specified in the statute, but, also, that it was executed by one authorized to give consent. But, notwithstanding this, it is said that the statements of Frances P. Clark were necessarily inconsistent and nugatory, because, if the parents were unknown, her custody could not have been lawful, and she could not have known whether the failure to contribute to the child's support was with or without just cause or fault. The contention cannot be sustained. If it were, it would preclude the adoption of a child abandoned at its birth, and whose parentage was not disclosed. The statute, which is very comprehensive, shows in various ways that it was intended to provide for the adoption of "any minor child," and the provision last quoted, when contrasted with other portions of section 6318, shows that it was intended to provide for, among others, the very case de-

scribed in the statements of Frances P. Clark, the purport of which was that the child was abandoned at its birth and that the abandonment had continued to the time of adoption. ·If in these circumstances she assumed and retained custody of it, giving it a home, care and protection, her custody was lawful, though not sustained by a grant from the parents, and their abandonment and continued neglect were most unnatural and impossible of justification. The statements were, therefore, not necessarily inconsistent or nugatory, but were plainly sufficient to sustain, as against a collateral attack, the court's finding that the written consent was executed by one authorized under the statute to give consent.

Referring to the fact that the adopted daughter was but three years old at the time of Mrs. Schamel's death, and to the evidence tending to show that the latter had been a good mother, and had expended part of her earnings, before mentioned, in supporting the child, the court told the jury that under the statute (Comp. St. Neb. 1901, §§ 2503, 2504), the loss of a mother's care, nurture, training, and instruction was an element to be considered in determining the pecuniary injury to a child of tender years as one of the next of kin. Complaint is made of this, but as the instruction was applicable to the case made by the evidence, and as it gave effect to the decisions of the Supreme Court of the state so far as it has spoken upon the subject (Missouri Pacific Ry. Co. v. Baier, 37 Neb. 235, 246–251, 55 N. W. 913; Chicago, Rock Island & Pacific Ry. Co. v. Zernecke, 59 Neb. 689, 697, 82 N. W. 26, 55 L. R. A. 610), as well as to what we deem to be the better rule (Tilley v. Hudson River R. R. Co., 24 N. Y. 471, 475; Id., 29 N. Y. 252, 285–287, 86 Am. Dec. 297), the complaint cannot be sustained. The damages are claimed to be excessive, but this is a subject which is not open to consideration in the federal appellate courts. Southern Pacific Co. v. Maloney, 69 C. C. A. 83, 136 Fed. 171; Illinois Central R. R. Co. v. Davies (C. C. A.) 146 Fed. 247.

Other contentions are presented by the assignments of error, and have been discussed by counsel, but, upon careful consideration, they have been found to be untenable.

The judgment is affirmed.