Whitaker, Judge,
delivered the opinion of the court:
Under the authority of a special Act of Congress (50 Stat. 1052), the plaintiffs in these five cases sue for damages for personal injuries alleged to have been sustained as a result of a collision between the defendant’s truck and an automobile driven by the plaintiff William W. McGregor, in which the other plaintiffs were passengers.
The collision happened on the road from the Mesa Verde National Park to Mancos, Colorado. The plaintiffs were traveling north-east on their way from the park to Mancos. Defendant’s truck was traveling south-west on the way to the park from Mancos.
McGregor, the driver of the car, says he saw the truck when it was about 300 feet away, that it was on the wrong side of the road, but that he continued on in his course on his right side, assuming the truck would pull over to its right side before the collision, but that it did not, and they ran together. None of the passengers in McGregor’s car saw the truck until just an instant before the collision, but they support McGregor’s testimony so far as they can. '
The driver of the truck says that he was on his right side of the road, and that the plaintiffs were on their wrong side, that he blew his horn at them and that, when they did not heed this, he put on his brakes, but when plaintiff continued on toward him and a collision was imminent, he cut the truck over to his wrong side of the road in order to pass plaintiffs on their right, and that plaintiffs at the same instant cut their car over to their right side of the road, as a result of all of which the two cars ran together. In this he is supported by the other occupant of the truck, a man named Durrett.
*643 The plaintiffs’ testimony is not convincing. None of them, except the driver, saw the truck until it was within IS to 25 feet of them, just a second before the crash, and some of them did not see it at all before the crash. They are not in position, therefore, to testify to its position on the road. They are in no better position to testify to their own position on the road, because all of them say they were looking out to the right of the road, either at the time of the crash or just an instant before, except one man who could not see anything because of another man sitting in his lap.
The defendant says the occupants of the car were looking at some deer to the right of the road. Plaintiffs admit there were some deer on the right of the road, but not at the place of the collision but from one-half to three-quarters of a mile back from the place of the collision. The evidence, however, convinces us they were looking at the deer at the time of the accident; but, if we are mistaken in this, it is at least true, as they admit, that they were looking out to the right and not at the road and, therefore, cannot testify to the position on the road of either the truck or their own car. Every automobile driver knows how quickly and how imperceptibly a car may leave its side of the road when he looks away.
The testimony of all the plaintiffs, except the driver, is valuable only on the position of the cars after the accident. This we shall discuss later.
Plaintiff McGregor, the driver of the car, says he saw the truck when it was 325 feet away, and that it was on its wrong side of the road and he was on his right side; but this statement does not stand up under scrutiny. We are convinced that McGregor, too, was looking out to the right and that he did not see the truck until just an instant before the collision. It is too great a tax on our credulity to ask us to believe that a driver, seeing a loaded truck bearing down on him on its wrong side of the road, will take no step to avoid the collision until just an instant before the crash, although he had ample opportunity to do so; and yet this is what McGregor says. He says he saw the truck 325 feet away, on its wrong side of the road coming straight at him. He says he did not blow his horn, he says he did not put on his brakes, he says he did not pull his car over to the right, although he could have run it entirely off the road with *644 safety. He did nothing to avoid the collision until the truck was within 25 feet of him, which, at the speed both vehicles were traveling, is less than a second away. By his own admission, he made no effort to avoid the collision until it was too late to have any chance to avoid it. His failure to do so can only be explained by the supposition that he had not seen the truck until he jerked his car to the right. All the testimony shows the truck was then about 25 feet away.
Other testimony indicates that McGregor ivas looking out to the right and had not seen the truck until too late to avoid the collision. The truck driver says he went up to Mc-Gregor’s car after the crash and said, “What was the trouble, Bill,” and that McGregor replied, “We were looking at those damn deer over there.” A man by the name of Ralph, who at the time was working foi’ the Phelps-Dodge Corporation •and who knew McGregor well, says he saw McGregor in front of the Mancos Hotel a short time after he had gotten out of the hospital and asked him “how in the world” the accident had happened. He said McGregor replied that he was watching some deer and that his car had gotten over on the wrong side of the road. Durrett, the other occupant of the truck, says that McGregor told him that he was watching a deer. McGregor in his signed statement made to Crouch, the ranger at the Park who investigated the accident, said they saw some deer to the right of the road about 400 yards from the scene of the accident. Hess, another of the plaintiffs, in his signed statement to Crouch says, “All in the passenger car were looking at the deer before the collision.”
We are convinced that McGregor did not see the truck until just an instant before the collision. He is, therefore, in no position to testify to the position on the road of either the truck or the car.
This is all the testimony offered by the plaintiffs, except as to the position of the vehicles on the road after the accident and the part of the car which was struck by the truck. This does not disprove the testimony of defendant’s witnesses but corroborates it.
The witnesses are in remarkable agreement on the position of the car after the accident. Some of defendant’s witnesses say its right front wheel was still on the oil mat, but near the east edge of the road (plaintiff’s side of the road). Plain. *645 tiffs’ witnesses put the right front wheel from a foot to eighteen inches off the oil mat and on the shoulder of the road, and the left front wheel still on the oil mat. They all agree the car wras sitting at about a 45-degree angle to the road.
There is more disagreement over the position of the truck after the accident. Some of the evidence places the left front wheel of the truck at from two to three feet east of the center of the road and the right front wheel to the west of it. (It seems the car was knocked back by the collision some two or three feet so that a man could have walked between the two vehicles. This accounts for the difference between the positions of the fronts of the two vehicles after the accident.) Other evidence places the left front wheel of the truck “near” the east edge of the oil mat.
But there is one thing about which the parties do not disagree, that is, that the car and the truck completely blocked the road, so that no one could have passed either on the east side or the west side. Admittedly, the car was blocking the east side, so it was the truck that was blocking the west side; it was blocking the west side, although the driver had cut it over to the east side just before the collision. Of necessity, therefore, the truck must have been on its right side of the road before the collision, as defendant’s witnesses say.
. On the other hand, the position of plaintiff’s car after the accident tends to disprove their statement that they were on their right side before the accident, and supports the statement of defendant’s witnesses that they were on their wrong side. Plaintiffs’ testimony is that their right w'heels were within 18 inches of the east edge of the oil mat before the accident, and after the accident the right front wheel was 18 inches off of the east edge. For this to be true, plaintiff’s car would have traveled not more than three feet to the right after McGregor jerked it in that direction, and not even this far if we take into account the distance it was knocked off toward the side of the road by the impact. But it must have traveled three or four times this far, since the truck was 25 to 80 feet away when the car was jerked to the right. Had it been on its right side of the road, as plaintiffs say, it would have run completely off the road before the collision. The *646 paved portion was only 10 feet on each side of the center of the road, with a shoulder of two feet on each side. After the impact, the car having stopped only one and one-half feet off the oil mat, it must have been over on the west side of the road when it was jerked to the right. This is the testimony of defendant’s witnesses.
A reading of the testimony convinces us that the truck was on its proper side of the road, that the driver was keeping a lookout ahead, and that he made every effort to avoid the collision that a reasonably prudent man would have made. When he saw plaintiff’s car on the wrong side of the road he blew his horn at him to try to attract his attention. When this did not succeed, he put on his brakes, but seeing that plaintiff’s car was still continuing on in his direction and was about to run into him, he cut his truck over to the vacant side of the road, although this was his wrong side. This was the only thing that he could have done which might possibly have avoided the accident because a ditch on his side of the-road prevented his pulling to his right. As it turned out, it was the wrong thing for him to have done, because at the same instant plaintiff cut his car over to the same side of the road; but defendant cannot be held accountable therefor because it was plaintiff’s negligence that had put the driver in this predicament. It is well settled that where a party’s negligence has placed the other party in a position of peril, he is not responsible for taking a course of conduct which under the surrounding facts and circumstances at the time appeared to be a reasonable and prudent thing to-do, although it turned out that it was the wrong thing to have done. Omaha Water Co. v. Schamel, 147 Fed. 502; Hoff v. Minneapolis, etc., R. Co., 14 Fed. 558; Southern Railway v. Smith, 214 Fed. 942; Southern Railway v. Sutton, 179 Fed. 471.
The defendant also defends on the ground the driver of plaintiffs’ car was at least guilty of contributory negligence. This is undoubtedly true. It then says his negligence is imputable to the passengers in the car, since it was being operated for their common benefit in going to and from their work, and that each contributed his share toward the expense of its operation. It is unnecessary to decide whether or not this is so, since we are of opinion the defendant was guilty of no negligence proximately contributing to the accident; but *647 on the point see Adams v. Swift, 172 Mass. 521; 52 N. E. 1068; Derrick v. Salt Lake & O. R. Co., 168 Pac. 335; Griffiths v. Lehigh Valley Transit Co., 292 Pa. 489, and other cases collected in 48 A. L. R. 1083. Cf. Campbell v. Campbell, 104 Vt. 468, 162 Atl. 379, 85 A. L. R. 626.
On the whole case we are of the opinion that the plaintiffs are not entitled to recover. Their petitions will be dismissed. It is so ordered.
MaddeN, Judge; and Whaley, Chief Justice, concur.