Sioux City Bridge Co. v. Dakota County.

SIOUX CITY BRIDGE COMPANY, APPELLEE, V. DAKOTA COUNTY ET AL., APPELLANTS.

FILED DECEMBER 18, 1900. No. 11,416.

1. **Tax Levy: SITUS.** A village can not levy a tax on property the *situs* of which is not within the corporate limits. *Chicago, B. & Q. R. Co. v. Cass County*, 51 Nebr., 369, and *Chicago, B. & Q. R. Co. v. City of Nebraska City*, 53 Nebr., 453, followed.

2. ——: ——:' JURISDICTION: VALID FROM INVALID TAX. A tax levied on a whole property, part of which is within and part without the territorial limits of the body imposing the same, is invalid as to that part levied on the portion without the jurisdiction, which renders the whole assessment void, unless the tax assessed against the part within the jurisdiction of the taxing body can readily be separated from the portion without it.

3. **Assessment: SITUS OF PROPERTY: JURISDICTION.** A property owner is not required to appear before a taxing board in opposition to the assessment of a tax on property whose *situs* is not within the jurisdiction of such board.

4. **Void Assessment: TENDER.** Where an assessment is wholly void, no tender of any sum is necessary to relief against the tax.

APPEAL from the district court for Dakota county. Heard below before EVANS, J. *Reversed in part.*

*W. E. Gantt* and *William P. Warner,* for appellants.

*Benjamin T. White* and *James B. Sheean, contra.*

NORVAL, C. J.

This suit was commenced in the district court of Dakota county by the Sioux City Bridge Company, to enjoin the collection of taxes assessed upon a certain bridge and its approach, the property of plaintiff, by the authorities of the village of South Sioux City. A portion of section 22, township 29, range 9, is included in the corporate limits of said village, and is bounded on one side by the Missouri river, the government survey having followed the meanderings of the river. Plaintiff's bridge crosses the Missouri river at this point, and its western end is adjacent to this portion of section 22. To reach the bridge an approach of considerable length is required, a large portion of which, at least, is within the corporate limits of said village. The whole of said approach and the west half of said bridge were assessed as being within the corporate limits of the village for the years 1896, 1897, 1898 and 1899, and said company brought this suit to restrain the collection of them, claiming that the whole of said taxes was void, for the alleged reason that said bridge and a portion at least of said approach were without the jurisdiction of the village. On trial, the following findings of fact were entered, decree being had thereon accordingly:

"1. The court finds that the plaintiff's bridge described in the petition filed herein consists of the bridge structure of spans supported by five piers and an approach, the approach being composed of dirt embankment and trestle-work over which the traffic is conducted to the bridge proper.

"2. The court finds that the west pier of said bridge, being the pier described in the testimony as 'pier five,' is situated about eight feet easterly from the meander line of the Missouri river at said point, which meander line is the eastern boundary of section twenty-two (22) in [township] twenty-nine (29) of range nine (9) east of the 6th P. M. in Dakota co⁻ ·ty, Nebraska.

"3. The court finds that in the year 1858, at the time the said meander line was surveyed, marked and fixed by the government surveyors and for some time subsequent thereto the high-water bank at the point where said bridge crosses said river was located under or easterly from the present location of said 'pier five.'

"4. The court finds that in 1887, at the time of the building of said bridge and at the time of the location of said 'pier five,' the high-water bank of said river was about ninety (90) feet westerly from said 'pier five' and that said high-water bank has continued practically unchanged as to its distance from said pier until the present time and is now about ninety (90) feet westerly from said 'pier five.'

"5. The court finds that there is an artificial embankment, constructed during the building of said bridge and subsequent thereto, running from said 'pier five' back to the said high-water bank over which the high water from said Missouri river has never flowed since it was erected in 1888, but the waters from the river at its high stages flow back to the high-water bank on each side of said artificial embankment.

"6. The court finds that in the year 1888, during the spring rise of said Missouri river, the water was entirely around and covered the present site of said 'pier five' and that in the fall of said year there was no water around the present site of said 'pier five' and that the low water mark of said Missouri river at the place where the said bridge is located is and has always been easterly from said 'pier five.'

"7. The court finds that for the year 1896 no return or schedule of property was returned by the plaintiff or by any person for it to the assessor for assessment. That the assessor as by law required returned the said property for assessment as one bridge and that prior to the filing of this case no appeal was ever prosecuted, which changed or complained of said assessment and return made by said assessor.

"8. The court finds that the approach of said bridge except a small portion thereof, is within the village of South Sioux City, Dakota county, Nebraska.

"9. The court finds that for the years 1897, 1898 and 1899 the plaintiff by its agent has returned said bridge for assessment under two heads as follows:

'Bridge, $72,000.00.

'Approach to bridge, $3,000.00.'

and that the assessor and officers of said county of Dakota have listed and assessed the same as if all of said bridge and approach were within the corporate limits of said village of South Sioux City.

"10. The court finds that the plaintiff has never tendered to the defendant county, or its treasurer, or any one for it, the taxes justly due the said village of South Sioux City, nor have the same been tendered to the said village, or to any one for it, except as the same are tendered by the amended answer filed in this case during the progress of the trial.

"11. The court finds that the tax listed, assessed and levied against bridge property and the plaintiff for the year 1896 is a proper charge, and that the injunction heretofore granted restraining its collection should not have been granted and should now be dissolved.

"12. That the taxes listed, assessed and levied against the approach of said bridge for the years 1897, 1898, and 1899, was and is a proper charge against said approach and the plaintiff, and the injunction heretofore granted restraining the collection should not have been granted and should now be dissolved as to the tax against the approach for said years.

"13. The court finds that the taxes listed, assessed and levied for village purposes for the years 1897, 1898 and 1899 upon the valuation of that portion of said bridge resting upon the piers is not a proper charge against said property or against the plaintiff and that the plaintiff is entitled to an injunction as to the tax levied or listed for such purposes against said portion of said bridge structure."

Upon the findings the lower court rendered a decree that the whole tax for the year 1896 was valid, and there- fore refused an injunction as to the collection of the tax for that year. As to the subsequent years involved in the litigation, the court decreed that the bridge being without the limits of the village, the tax upon it was void, and the defendants were accordingly enjoined from collecting the same. As a large portion of the approach was within the corporate limits of the village, the tax as levied for those years upon that structure was de- creed valid, and the court refused to enjoin their col- lection. From this decree both parties appeal to this court, and the whole case is before us for consideration.

It will be noted that the findings numbered 2, 3, 4, cause the principles of law governing this case to fall within the decision in *Chicago, B. & Q. R. Co. v. Cass County, supra*, wherein it was held that a railroad bridge, no part of which touched any portion of a school district, could be assessed by said district. It was ruled that the boundaries of the district were the high-water bank or meander line of the government subdivision of land in- cluded in it, the meander line and the high-water bank coinciding at that point. It is conceded by counsel for defendant that this case falls within the doctrine therein announced; but the decision itself is attacked as not a proper rule, and we are asked to hold that the boundary of the village is either the line of low water in said river, or the middle thread of the stream. We are satisfied with the principles announced by that decision, which have also been followed in *Chicago, B. & Q. R. Co. v. City of Nebraska City*, 53 Nebr., 453. It is possible, however, that in the *Cass County Case* the learned commissioner who prepared the opinion somewhat confused the terms "high-water bank" and "meander line," as he uses the same interchangeably—an error doubtless growing out of the fact that the two lines coincided at the point where the bridge under consideration in that case was located. The decision, in effect, held that the boundary of the

school district is the line of high water, or the high-water bank, and with that conclusion we are satisfied. It is, therefore, unnecessary to further discuss the question more in detail than to say that the bridge structure in controversy here is wholly without the corporate limits of the village, and is not taxable by it. The court below was right in enjoining the defendants from collecting any taxes so levied upon said bridge structure.

The next question for discussion is, was it error to declare valid the whole of the tax levied for the year 1896 upon both bridge and approach, according to finding of fact No. 7, wherein it appears that for the year 1896 no schedule of property was returned by plaintiff to the assessor; but that the latter assessed both bridge and approach as one structure, and that no appeal was ever taken from the assessment or the taxes levied thereon? The lower court, doubtless, reached the conclusion that plaintiff was estopped from questioning the validity of this tax; that a portion of this bridge was (for we assume that the approach is a part of the bridge) within the corporate limits of the village, the county commissioners had jurisdiction of the matter; and, having acquired jurisdiction, its action in levying the tax upon the whole structure was adjudicated, since no appeal was taken from the assessment. This conclusion is proper, if the fact that a portion of the property sought to be assessed being without the jurisdiction of the corporation did not render the act of the authorities wholly void. If its act was for that reason invalid, then no duty devolved upon plaintiff to appeal from the assessment. If the whole of this property was without the limits of the village, there is no doubt that such attempted assessment would be void. *Chicago, B. & Q. R. Co. v. Cass County, supra.* Does the fact, that the *situs* of a portion of the property sought to be assessed was within the village limits, take the case outside of the rule therein announced? As is well said in counsel's brief, the point here presented is one going to the very power, authority and jurisdiction of

the taxing authorities, and is not a question of mere irregularity occuring while exercising a valid power. We are inclined to adopt the rule that, because the citizen has the right to assume that municipalities, through their officials, will properly perform their duties (one of which is to know the boundaries of the corporate territory), there is no obligation imposed upon a property owner to appear before the taxing body and complain should it attempt to assess as a whole property, part of which is within and part without the territorial limits of the municipality, and that such tax, being void in part, because of want of jurisdiction, which jurisdiction it was the duty of the officials to know, the whole of such assessment is void, unless the amount of tax assessed against that portion within its jurisdiction can be readily separated from the portion without. *Arthur v. School District*, 30 Atl. Rep. [Pa.], 299; *Mills v. Johnson*, 17 Wis., 622; *Crane v. City of Janesville*, 20 Wis., 321; *Hebard v. Ashland County*, 55 Wis., 145; *Hutchinson v. Omaha*, 52 Nebr., 345. As this court will not resolve itself into a taxing board, and as the record presents no data from which to determine what portion of this tax is valid and what part invalid, we must hold the whole void, and it necessarily follows that the court erred in refusing a perpetual injunction as to the taxes assessed for the year 1896.

Did the court correctly hold that the tax levied on the bridge proper for 1897, 1898 and 1899 was void, and that the assessment upon the approach was valid? This portion of the decree was based upon finding of fact No. 9, wherein it was found that plaintiff returned the bridge for the years separately from the approach, though the officers assessed the same as if all of said bridge and approach were within the corporate limits of said village, but declared that the taxes upon the approach were valid, to the extent of the value placed upon it by plaintiff, to-wit, $3,000. Plaintiff, by making its return, was not estopped to question the validity of the tax (*Chicago, B.*

*& Q. R. Co. v. Cass County, supra*); and, by the same authority, it was doubtless right in holding the attempt to assess the bridge void. Was that portion of the decree sound declaring the tax upon the approach valid? If the attempt to assess the bridge and approach as a whole in 1896 was void, for the reason that a portion of said structure, taking it as a whole, was without the corporate limits of the village, as we have already determined, then for the same reason any attempt to tax the whole of the approach was also void, for by finding of fact No. 4 at least ninety feet of said approach is east of the high-water bank of the Missouri river, and, therefore, outside of the limits of said village, and as we have no means of separating that portion of the tax upon this approach which is void from that portion levied upon the part of the approach which is within the limits of the village, the whole of the tax is invalid, and the court erred in declaring any of the taxes assessed for said years 1897, 1898 and 1899 on either said bridge or said approach to be valid.

No tender of any amount of these taxes so attempted to be levied was made by plaintiff before suit, though during the trial an amended pleading was, by leave of the court filed, wherein plaintiff offered to pay such taxes as the court might decree to be valid; and it is argued that for the reason that no tender was made before suit commenced it can not be maintained. This tax is wholly void, not merely irregular, and, therefore, no tender was necessary. *Morris v. Merrell*, 44 Nebr., 423; Cooley, Taxation [2d ed.], 764, note 1; *Yocum v. First Nat. Bank of Brazil*, 38 N. E. Rep. [Ind.], 599; *Wells County v. Gruver*, 17 N. E. Rep. [Ind.], 290; *De Fremery v. Austin*, 53 Cal., 380.

Considerable discussion has taken place in the briefs as to whether the approach to this bridge was a part of the bridge, that is, whether the two constitute one structure, or two. So far as pertains to this litigation, we think the question immaterial. The corporate authori-

ties of the village can tax no more of the property of plaintiff than is situate within the corporate limits. It has a right to tax all that portion within its limits, but not an inch more. Doubtless, no more difficulty will be encountered in arriving at the value of that portion within the territorial limits of the village than would occur were the structure a railroad, which, being a whole, might have one mile of its road-bed within the village and several thousand miles outside it.

The decree is accordingly

REVERSED IN PART AND AFFIRMED IN PART.