ABRAHAM L. REED ET AL., APPELLANTS, V. COUNTY OF DOUGLAS, APPELLEE.

28 N. W. 2d 144

Filed June 13, 1947. No. 32210.

*Morsman & Maxwell,* for appellants.

*James J. Fitzgerald* and *William C. Ramsey,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an equitable action, brought against Douglas County, for the purpose of determining that the taxes levied and assessed for several years against certain accretion lands are null and void, and to remove the cloud thereby cast upon the title to said land, and for other equitable relief. The trial court denied the relief prayed and dismissed the action, from which decree plaintiffs appealed.

The plaintiffs are the owners of the lands in question, which are accretions on the west side of the Missouri River in Douglas County, and described as Government Lots 1, 2, and 3, in Section 6, Township 15 North, Range 14, all of such accretion land lying east of the right-of-way of the East Omaha Drainage District.

The owners of this land in 1925 and 1926 platted that part of their land lying on the west side of the drainage ditch. The plat shows that a road, called Woodland Road, is just to the west of and parallel with the levee of the drainage district through all the additions. They then platted three additions, to wit, Woodland Acres, Woodland Acres Annex, and south of these additions an addition called Reedwood Acres, all on the west side of this road and levee. These additions having many blocks divided by many streets and avenues, and the stipulation of facts in the bill of exceptions shows that these three additions have now been entirely taken over by the City of Omaha by condemnation proceedings in connection with the municipal aviation field.

It is stipulated that if plaintiff Abraham L. Reed was called as a witness he would testify that back in the fall of 1921 the plaintiffs executed an instrument which granted an easement to the East Omaha Drainage District, which district is a governmental subdivision of the state of Nebraska, for which reason its property is exempt from taxation. The original agreement for this easement was never recorded, and appears to be lost, but it provided for an easement of a 75-foot strip over this accretion land.

However, an instrument for an easement in perpetuity was introduced in evidence as exhibit No. 5, which was dated June 27, 1946, between the same parties, and appears to have been recorded July 15, 1946, in the register of deeds' office. This exhibit stated that this 75-foot easement, from Thirty-third Street, East Omaha, to Pinkney Street, contains 13.605 acres.

It should be noted that this recent instrument contains, in Parcel II, in addition to the original easement, additional right-of-way, being therein conveyed for the first time.

Because these accretion lands were swampy and of no agricultural value, they were not entered on the tax rolls of Douglas County prior to the year 1937, in which year the county assessor placed such lands on the tax roll as Government Lots 1, 2, and 3, heretofore described, placing a substantial valuation on each of said lots. The county board levied taxes for that year on Lot 1 of $95.75, on Lot 2 of $134.05, and on Lot 3 of $95.75, which was done without notice to the plaintiffs. The lands were described as accretion lands to Government Lots 1, 2, and 3, lying east of the platted additions heretofore mentioned. As the easterly boundary of these additions was the road known as Woodland Road, the description entered by the assessor on each of these lots covered the land in the easement of the East Omaha Drainage District, which was approximately 75 feet in width.

Taxes were also levied and assessed on each of these accretion lots for the subsequent years.

It appears by a stipulation in the bill of exceptions that the Byron Reed Company, which had been the company which originally platted these additions, filed a complaint of the taxes for the year 1942 before the board of equalization of Douglas County, and asked to have the assessed valuation of the aforesaid accretions reduced, and the county board of equalization reduced the valuation thereon, from which no appeal was taken. It is claimed by the plaintiffs that they did not know of nor authorize this appeal to be taken by the Byron Reed Company, by whom a declaration of trust was executed, showing that the conveyance of lands to it by plaintiffs was to plat certain portions of said lands and sell and convey same by warranty deed, and to account therefor to plaintiffs.

The taxes were not paid for any of the years from 1937 to 1941, nor were the taxes paid in 1942 on the reduced valuation, and taxes were levied and assessed for the years 1943, 1944, and 1945, none of which have ever been paid.

It is alleged that, in conformity with section 77-1918, R. S. 1943, the county board, after examining the report of the county treasurer, issued an order directing the county treasurer to issue to Douglas County a certificate of tax sale for the accretion lands to Government Lot 1 for taxes for the years 1937 to 1942, inclusive.

It is alleged in the second cause of action that, under the same authority and in the same manner, a tax certificate was issued to Douglas County on the accretion to Government Lot 2. And in the third cause of action it is alleged that another tax certificate was issued to Douglas County on the accretion land to Government Lot 3. It is also alleged that taxes have also been levied and assessed separately against each of said three lots for the years 1943, 1944, and 1945, all of which are null and void and constitute a cloud on plaintiffs' title to said

lands, and plaintiffs are entitled to have the same vacated and set aside.

The prayer of the plaintiffs' petition is for a decree adjudging that the taxes purporting to have been levied and assessed against the plaintiffs' accretion land in Government Lots 1, 2, and 3 are null and void, and of no force and effect, and constitute the taking of plaintiffs' land without due process of law, and that the cloud cast upon the plaintiffs' title to the said lands be removed, and for such other relief as may be just and equitable.

The county of Douglas in its answer admits that the East Omaha Drainage District was organized as alleged, and further admits that any real estate owned by said drainage district is not subject to taxation. The defendant county admits that the lands of the plaintiffs and the lands which the plaintiffs allege to be the right-of-way of said drainage district were assessed together as one tract for the purpose of taxation, and taxes were levied thereon from the year 1937, as alleged. The defendant county admits that on April 10, 1944, three certificates of tax sale covering said land were issued to Douglas County for taxes for the years 1937 to 1942, and alleges that said certificates of tax sale are valid first liens upon the property described therein. The defendant county admits that the real estate in question was placed upon the tax rolls for the first time in the year 1937, without notice to the owners of the land.

The defendant also alleges that the land to which plaintiff claims ownership and the land which plaintiff alleged to be the right-of-way of the drainage district appeared upon the public records as all belonging to the same owner and as one entity, or tract of land, at the time each of said assessments for taxation purposes was made, and further alleged that at no time prior to bringing this action had the taxing officials of Douglas County been notified that the East Omaha Drainage District owned or claimed any title to any part of this land, and have never been notified that there has been

a division of ownership of said tract of land, nor have the plaintiffs ever requested Douglas County officials to set off or apportion to any part of said land the full and just portion of the assessed valuation and tax levied thereon.

The defendant further alleges that the plaintiffs have not at any time offered to pay to the county treasurer of Douglas County a just proportion of the taxes that have been assessed and levied upon that part of said tract of land of which the plaintiffs allege ownership, and the plaintiffs are estopped in this action from questioning the assessed valuation placed upon said land. Defendant Douglas County prays that the plaintiffs' amended and supplemental petition be dismissed and that the defendant go hence without day and recover its costs herein expended.

The plaintiffs' assignments of error alleged that the trial court erred in its findings and decree dismissing the plaintiffs' first cause of action, for they were not sustained by sufficient evidence and are contrary to the evidence and contrary to law. Plaintiffs made the same allegation in regard to their second and third causes of action separately.

It is further alleged that the trial court erred in dismissing the three causes of action, because essential allegations of plaintiffs' pleadings were admitted by defendant's answer, and by such admission the defendant is conclusively bound and thereby estopped from contending that the purported taxes levied constitute a valid lien against plaintiffs' lands; that the defendant admitted in the stipulation of facts material and essential allegations of plaintiffs' pleadings, and is thereby bound and estopped from contending that the purported taxes constitute any lien against the same.

In determining the questions involved in this case, we find that, when the assessor first placed said Government Lots 1, 2, and 3 on the assessment schedules and levied taxes thereon in 1937, there was an easement in

the westerly line of these three lots for a 75-foot drainage ditch of the East Omaha Drainage District, and which embraced an area of about 13.605 acres.

Of what did the three lots consist? In the amended and supplemental petition it is stated that Government Lot 1 embraces 99.36 acres, Lot 2 embraces 108.6 acres, and Lot 3 embraces 73.884 acres, or a total acreage of 281.844 acres. It is shown that of Lot 1, 49.36 acres are under water, leaving 50 acres above water; of Lot 2, 36.6 acres are under water, leaving 72 acres above water; and of Lot 3, 13.884 acres are under water, leaving 60 acres above water. Accepting these figures, they show that there are at least 182 acres of land above water, belonging to the plaintiffs, which were not assessed at all until 1937, and since then have been assessed each year, but the owners have never paid any taxes whatever, as shown by the record.

Section 77-1306, R. S. 1943, requires the assessor each year to add to the real estate assessment all real estate "that shall have become subject to taxation since the last previous listing of the property in the county, with the value thereof, * * *." Such real estate shall be valued for taxation purposes at its actual market value, and any excessive valuation of such property may upon complaint of the owner be corrected, first, by the county board of equalization (§ 77-1503, R. S. 1943), and, on appeal, by the district court (§ 77-1513, R. S. 1943). See Wilson & Co. v. Otoe County, 140 Neb. 518, 300 N. W. 415.

In the stipulation of the parties, it was agreed that plaintiffs were the fee title owners of said Government Lots 1, 2, and 3. Also, that engineer Roy N. Towl would testify, if called as a witness, that he was engineer for the East Omaha Drainage District, which constructed a levee across the accretions to Government Lots 1, 2, and 3, and for which a grant for a perpetual easement had been given; that said work has ever since been kept in

repair, and stands today across the land where it was originally constructed.

The exhibit of the transcript of the bond issue indicates that bonds were authorized in the principal amount of $254,500 for the construction of said drainage district.

The exhibit showing the plat and dedication of the lands in this addition was presented to the city council of Omaha and approved by James C. Dahlman, mayor, on May 12, 1925, and recites that the Byron Reed Company, by Abraham L. Reed, president, is the owner and proprietor of the above described property, as shown by Deed Record 521, page 36, of the records of Douglas County.

The stipulation of counsel, as found on page 58 of the bill of exceptions, reads in part as follows: "That the description of said accretions to said Government Lots 1, 2 and 3 on defendant's said tax records for the year 1937 and subsequent years up to and including 1945 embraced not only plaintiffs' accretion lands to said Government Lots 1, 2 and 3, lying east of said right-of-way of said East Omaha Drainage District, but also embraced such right-of-way of the Drainage District and the dike or levee constructed thereon; * * * ."

Therefore, this evidence discloses that the assessor placed assessments of taxes upon the entire 182 acres in Government Lots 1, 2, and 3, and thereby included 13.605 acres in the drainage district which were exempt from taxation, and against which the taxes levied were therefore void.

We will now examine some of our Nebraska opinions relating to similar situations. In Young Men's Christian Ass'n v. Lancaster County, 106 Neb. 105, 182 N. W. 593, the county assessor valued the five-story brick building in Lincoln at $100,000. Objections were filed with the county board of equalization on the ground that the property was used exclusively for religious, educational and charitable purposes, and was therefore exempt from taxation. But evidence disclosed that, in addition to the

offices and dormitories, there was also a cafeteria, in which necessary floor space was leased to outside parties, who paid 10 percent of the gross receipts as rental, which averaged about $700 a month, and small spaces were rented to a tailor shop for $15 a month and to a barber shop for $25 a month. The county board of equalization reduced the valuation to $80,000, but on appeal the district court held the entire building exempt from taxation. This court held that the judgment should be reversed and the cause remanded to the district court with instructions to ascertain the taxable value of that portion of the property which was taxable, having due reference to the taxable value of the entire property.

Another Nebraska case is that of Sioux City Bridge Co. v. Dakota County, 61 Neb. 75, 84 N. W. 607. The plaintiff began action in the district court to enjoin the collection of taxes upon its bridge and the approach thereto by the Village of South Sioux City, the plaintiff claiming that the whole of said taxes was void for the reason that the bridge itself and 90 feet of the approach to the bridge were outside of the corporate limits of the village. It was held by this court that "A tax levied on a whole property, part of which is within and part without the territorial limits of the body imposing the same, is invalid as to that part levied on the portion without the jurisdiction, which renders the whole assessment void, unless the tax assessed against the part within the jurisdiction of the taxing body can readily be separated from the portion without it."

We will now consider the case of McDonald v. Masonic Temple Craft, 135 Neb. 48, 280 N. W. 275, 118 A. L. R. 855, which plaintiffs rely upon to support their contention in the case at bar that the levy of a tax on the entire area of each of their three lots, upon which there was an easement for an exempt drainage ditch along the west side, made all of the taxes levied on these three lots for all these years absolutely void. It appears that the Masonic Temple Craft built a four-story building in

North Platte, and the two upper floors were used exclusively for purposes of the Masonic order, and therefore were held to be exempt from taxation. The two lower floors of the building, being rented for commercial purposes, were subject to taxation, but the property was assessed for taxation as a whole, and in the opinion it is stated on page 51, "There never has been an assessment levied upon the property not exempt as it has been commingled with the exempt part." It was held that "Where a tax is levied upon property as a whole, and a part is exempt * * *, the assessment, if inseparable, is unauthorized and the whole tax is void."

It appears from the holdings in the last two cases that, if a tax is levied on exempt and nonexempt property and it is impossible to separate it, then the tax is void, but if it can be separated it is not void.

In the annotation following the McDonald case, in 118 A. L. R. 861, it is said: "And the practical question, admitting the correctness of the above rule, would seem to be largely as to whether the tax is apportionable. In the majority of the cases in the annotation it seems that there has been such an apportionment and the tax on the nonexempt part therefore sustained."

We have reached the conclusion in the case at bar that, from the maps, stipulations, and evidence, there will be no difficulty in separating and determining the area of the exempt and nonexempt portions of said Government Lots 1, 2, and 3 and then apportioning to the nonexempt portions of said lots the correct amount of taxes for which each is legally liable.

The judgment of the lower court is hereby reversed and the cause is remanded, and the district court is directed to separate the exempt from the nonexempt portions of said lots and to determine and apportion the actual and correct amount of taxes due for each of the years in question on the nonexempt portion of each lot in question.

REVERSED AND REMANDED.