WILSON & COMPANY, INC., APPELLANT, v. OTOE COUNTY ET AL., APPELLEES.

300 N. W. 415

FILED OCTOBER 24, 1941. Nos. 31154, 31155.

*Tyler & Frerichs,* for appellant.

*Moran & James, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and FALLOON and ELLIS, District Judges.

FALLOON, District Judge.

These proceedings are to review the actions of the board of equalization of Otoe county in placing valuations for assessment purposes on certain property of the appellant, Wilson & Company, Inc., for the years 1938 and 1939.

The 1938 valuations complained of are part of lot 5 in the northeast quarter, north of Missouri Pacific right of way, and 54/100 acres, in section 17-8-14, on which a value of $1,450 was placed, and Tract A in the northeast quarter of the northwest quarter, in section 17-8-14, on which was placed a valuation of $92,000. This action was affirmed by the Otoe county district court.

The 1939 valuations as fixed by the board of equalization involved five tracts and were as follows: Lot 3, 23.50 acres, $2,500, part of lot 5, 4.34 acres, $1,000, Tract A, 16.97 acres, $47,000, lot 13, 5.36 acres, $575, and lot 12, 63.98 acres, $4,100. The district court for Otoe county affirmed all values above set forth, except as to Tract A the court reduced its value to $36,000.

These two appeals were consolidated for trial in the district court, though separate judgments were rendered, and by agreement were consolidated for briefing and argument in this court.

The several tracts involved are all contiguous and lie adjoining the city limits of Nebraska City. They formerly constituted the Morton-Gregson meat packing plant which was closed the forepart of the year 1932, and the property abandoned for industrial purposes. Morton-Gregson was dissolved and the premises became the property of Wilson & Company, Inc.

The appellant contends that for both years the property should be assessed at its fair market or cash sale value, and that in 1938 the buildings and structures should have been assessed to Aaron Ferer & Sons whom it was claimed had bought them for demolition purposes.

Section 77-201, Comp. St. 1929, is the guide for assessing property for taxation purposes. It provides: "All property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued and assessed at its actual value. 'Actual value,' as used in this act, shall mean its value in the market in the ordinary course of trade."

It is likewise the rule in this state that the valuation ultimately fixed by the board of equalization is final unless shown by clear and convincing proof to be erroneous.

Let us note here that the 1939 legislature amended section 77-201, *supra,* by adding thereto, as appears in section 77-201, Comp. St. Supp. 1939. This amendment was passed with an emergency clause and approved April 1, 1939. The emergency clause declares, "Whereas, an emergency exists, this Act shall be in full force and take effect, from and after its passage and approval, according to law." Laws 1939, ch. 102. Section 77-1601, Comp. St. Supp. 1939, requires that all real property shall be assessed "on the first day of April," 1939. The question arises, what day did this emergency amendment go in effect, the date of its approval? Section 20-2222, Comp. St. 1929, provides that time "shall be computed by excluding the first day and including the last.". This section, then section 895 of the Code, was construed by this court in *McGinn v. State,* 46 Neb. 427, 65 N. W. 46, and following the reasoning therein we conclude that where a statute provides that it shall

take effect, "from and after its passage and approval," in computing the time when it takes effect, the day of its passage is excluded, and it goes into effect the next day. In harmony with this rule of construction are *Parkinson v. Brandenburg*, 35 Minn. 294, 28 N. W. 919; *Mushel v. Board of County Commissioners*, 152 Minn. 266, 188 N. W. 555; *Arnold v. Board of Supervisors*, 151 Ia. 155, 130 N. W. 816; and *O'Connor v. City of Fond Du Lac*, 109 Wis. 253, 85 N. W. 327. Both the 1938 and 1939 valuations are therefore guided by section 77-201, Comp. St. 1929.

The witness Lathrop for the appellant fixed the valuation of the two tracts in dispute for 1938 at $1,175, and for 1939 he fixed the valuation for the five tracts at $4,-371.50. He stated he did not take into consideration any of the improvements because he considered them a detriment to the real estate. This witness was reared in Otoe county, register of deeds there for nine years, abstractor, and 'kept records for four years for the Nebraska City Building & Loan Association, organizer of First Trust Company there and its president and managing officer since 1923, well acquainted with property in question as well as general property values in that community.

The valuation as put upon the property by the county commissioners, who are members of the board of equalization, was approximately what their board had determined, that is, for 1938 the valuation of the tracts in dispute was $93,450, and for the five tracts in 1939 was $55,-175. The district court allowed the valuation to stand for 1938, but for 1939 the district court placed it at $44,175.

The county clerk, who is the county assessor, placed the valuation of the five tracts for 1939 at $51,000, that he did not consider whether the buildings were unoccupied or not, as long as they were there, that he considered partly their intrinsic value, that he also considered that the tax rate in Four Mile precinct where these buildings were located was 10.72 mills, whereas in Nebraska City the tax rate was 44.75 mills, that a $20,000 building there would correspond in taxes paid to a $80,000 building here. Much

of the other testimony adduced by the appellee was to the effect what it would cost to replace these buildings.

The evidence also shows that the operating plant closed down in May, 1932, and was not used afterwards except by the government in a relief program for killing drought cattle for a few months in 1934. A couple of buildings and tracts were rented which produced revenue of about $360 a year. The evidence also discloses that not to exceed 35 acres were tillable out of the approximate 115 acres.

The present assessor, Walker Neeley, said he was told to let the valuation heretofore made stand for 1938, and that he took in consideration that it would be expensive to build the buildings, he did not consider whether they were used or not.

The expert witness, Lewis E. Sholes, who had lived in Omaha for 61 years, 42 years of which was in the real estate business and for 40 years handling industrial properties, was called by the appellees. He testified that he had appraised properties in many cities and had visited and looked over this property so he could testify. His testimony was in regard to the property for industrial purposes, he put the values for April 1, 1938, and 1939, that he first visited this property for the hearing which was the last of May, 1940, that the property could be sold for industrial purposes, within three years if conditions were right, and if it were rehabilitated by an expenditure in excess of $16,000. He did not know of any demand at this time for the property and his whole testimony is so speculative and full of hopes for the future as to be practically worthless as a means of arriving at a true valuation. Moreover his testimony might well have been excluded as the knowledge he obtained in regard to these premises was too remote in time. There is no evidence that he ever saw the property in 1938 or 1939 or prior thereto. His estimation of the values was predicated upon so many assumptions purely speculative that it is of no practical benefit to the court in arriving at a correct judgment.

The evidence also discloses that it would cost $6,000 to

wreck other remaining buildings in which there would be little salvage. There is also some testimony that the property in question might be offered for sale at $3,000 by appellant.

The evidence further discloses that a contract was entered into by Aaron Ferer & Sons with Wilson & Company, Inc., on November 26, 1937, for the demolition of certain buildings on this packing company site. The consideration, as provided in the contract, was $10,105. This contract was never filed of record. The contract provided that "all of the material that is to be wrecked and removed will become the property of Ferer."

The contract further provided that certain bonds should be given for compensation insurance, public liability, and completion of work, before the work could be started, and that all work should be completed by December 31, 1938. The evidence discloses that some of the buildings were demolished prior to April 1, 1938, and on Tract A were demolished prior to April 1, 1939. Whether the consideration on this demolition contract had been paid or not was never mentioned before the board of equalization.

What other evidence was before the board of equalization does not appear, but the presumption is in favor of the equalization board that it properly assessed the property to the right party, and the appellant here having the burden to prove their action wrong, unless it conclusively so appears, their action in such regard should stand. The assessment should be charged to the owner, but under the contract and the evidence submitted in this regard it was probably properly assessed. Besides, in view of the action taken by this court, it is just and right that this contention of appellant should be denied. In saying this, we are not unmindful of the rule that buildings may be removed and separately assessed in the name of the real owner. But in this case the property was not to become Ferer's until removed, and under the evidence it has not been conclusively shown just when that part of the contract was fulfilled.

The testimony conclusively shows that the buildings

are old, out of use for many years, and that it would take large expenditures to make them fit for use.

Shall valuations be based on future dreams, or is the safer rule to follow, wait till the dreams come true and then base the correct valuation in the light of what actually is?

Property for taxation purposes shall be valued and assessed at its actual value, that is, its value in the market in the ordinary course of trade. It ·cannot be based on its intrinsic value or what its value might be in the future, but must be based on its actual or market value. An assessment made upon the theory of the inherent value of construction without considering its actual market value is clearly erroneous. To hold that theoretical values, based on possible conditions in the future, are actual values now would constitute constructive fraud, and should not be allowed to stand.

So it seems to us that, while there might be the possibility of a larger value in the future, or that by the expenditure of a large sum of money the premises might be made usable, likewise in an uncertain future, the great weight of the evidence is that at the times the assessments were made the actual value, within the meaning of the statute, would not exceed approximately one-fifth of the total placed upon the tracts collectively that are in dispute.

The burden has not been sustained by the appellant except as to Tract A which we·find is erroneous and should be reduced from $92,000 to $12,000 for the year 1938 and for the year 1939 from $36,000 to $2,000. We also find that the other valuations should stand as found by the board ·of equalization and the court below. In other .words, the total value of the two tracts in dispute for 1938 should be $13,450 instead of $93,450, while for the year 1939, the total value should be $10,175 for the five tracts instead of $44,175 as valued by the district court. Evidence of greater values cannot be found in the record. Reductions should be made as herein found. Both actions are accordingly reversed, with directions to the district court to enter the actual valuations as herein found.

REVERSED.