STATE OF NEBRASKA EX REL. FIRSTIER BANK, N.A., OMAHA, RELATOR, V. HONORABLE JAMES A. BUCKLEY, JUDGE OF THE DISTRICT COURT FOR DOUGLAS COUNTY, NEBRASKA, RESPONDENT. STATE OF NEBRASKA EX REL. FIRSTIER BANK, N.A., OMAHA, RELATOR, V. HONORABLE STEPHEN A. DAVIS, JUDGE OF THE DISTRICT COURT FOR DOUGLAS COUNTY, NEBRASKA, RESPONDENT.

503 N.W.2d 838

Filed August 13, 1993.    Nos. S-92-1082, S-92-1083.

Louis A. Huber III and Daniel R. Young, of Smith, Gill, Fisher & Butts, P.C., and E. Terry Sibbernsen, P.C., for relator.

No appearance for respondents.

David S. Houghton and T. Geoffrey Lieben, of Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, P.C., for amici curiae Carroll et al.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

HASTINGS, C.J.

These consolidated cases are original actions for writs of mandamus. Relator, FirsTier Bank, N.A. (FirsTier), seeks writs from this court compelling respondents, the Honorable James A. Buckley and the Honorable Stephen A. Davis, judges of the district court for Douglas County, Nebraska, to enter orders disqualifying the Omaha, Nebraska, law firm of Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, P.C. (Lieben, Dahlk), from representing the plaintiffs Samuel C. Carroll and Joan C. Nellson in a lawsuit pending against FirsTier before Judge Buckley, and the plaintiffs Billie Pepper Trachtenbarg et al. in a lawsuit pending against FirsTier before Judge Davis. We grant the petitions.

The factual statement of these cases is taken largely from the findings of fact made by a special master appointed by this court, the pleadings in the pending cases, the proceedings before Judges Buckley and Davis on the original motions to disqualify counsel, and various exhibits which have found their way into this record. The underlying lawsuits, captioned "Samuel C. Carroll and Joan C. Nellson vs. FirsTier Financial Inc. and FirsTier Bank, N. A. Omaha," Douglas County District Court, docket 905, page 801, pending before Judge Buckley, and "Billie Pepper Trachtenbarg, Jean Pepper Horen, Linda Priesman Smith and Steven [P]riesman vs. FirsTier Financial Inc. and FirsTier Bank N. A. Omaha," Douglas

County District Court, docket 905, page 780, pending before Judge Davis, involve claims that Omaha National Bank (ONB), predecessor of FirsTier, as executor of the Anna B. Carroll estate and as trustee of the Issac Zimman Testamentary Trust, fraudulently engaged in self-dealing. It is alleged that ONB, during the year 1971, accepted tender offers by the Omaha National Corporation (ONC), ONB's holding company, to purchase shares of stock in ONC held as assets of the respective estate and trust, and transferred those shares to ONC for $20 per share; that ONB failed to notify or obtain the approval of the beneficiaries of the estate and of the trust regarding such self-dealing; and that ONB obtained approval of its final account without disclosing the self-dealing to the county court. The various plaintiffs further alleged that the self-dealing constituted a breach of trust on the part of ONB amounting to fraud and bad faith, and the plaintiffs sought rescission of the sale, recovery of earnings and dividends earned on the stock sold, and return of all executor and trustee fees paid to ONB.

Although not alleged in the petitions in these underlying actions, it otherwise appears from the record that ONB was represented as executor in the Carroll estate by the Omaha law firm of Fitzgerald, Brown, Leahy, McGill & Strom (Fitzgerald, Brown) and that these same attorneys represented ONB in a similar case involving the estate of Idella Hamlin George. As part of the services rendered by Fitzgerald, Brown, that firm obtained an order of discharge of the executor from the county court in November 1972 in the Carroll case. Fitzgerald, Brown, in representing ONB in the George estate, prepared the report and petition for approval of the annual accounting for the year 1971, which included a computer printout of the tender offer transaction.

The plaintiffs in the Carroll case, as well as the plaintiffs in the Trachtenbarg and two other similar cases, are represented by the law firm of Lieben, Dahlk. Eight attorneys moved from the Fitzgerald, Brown firm on August 31, 1988, to form with others the Lieben, Dahlk firm. At that time, there were 28 attorneys in the Fitzgerald, Brown firm. Of those attorneys leaving, only T. Geoffrey Lieben was associated with the Fitzgerald, Brown firm during the activities complained of.

Lieben was originally employed by Fitzgerald, Brown on May 24, 1971, and was made a partner on April 1, 1976. The remaining Lieben, Dahlk attorneys became associated with Fitzgerald, Brown during the period from May 1, 1974, to August 15, 1987.

In its petitions seeking mandamus, FirsTier alleges that in the Carroll estate, the services of Fitzgerald, Brown "included obtaining the Order of Discharge of the Executor from the County Court in November of 1972" and that "Plaintiffs in the underlying action now contest the validity of that Order of Discharge." Although no such allegation concerning the contested validity has been made by the plaintiffs in their petitions, that inference could be drawn. FirsTier also alleges that in the George trust, at least, it continued to inform Fitzgerald, Brown of its actions as trustee as part of filing of annual reports until 1976, when the Nebraska Probate Code made filing such reports unnecessary. FirsTier concludes by alleging that the orders of respondents denying FirsTier's motions to disqualify Lieben, Dahlk are violative of "both the letter and spirit of Cannons [sic] 4, 5 and 9 of the Code of Professional Responsibility and Neb. Rev. Stat. §7-105" and that each order

> imposes a substantial injury upon Relator in that it permits counsel who were formerly members of the firm which represented Relator from [sic] later repudiating that representation and suing the Relator on matters substantially related to the former firm's representation of Relator, all in violation of Relator's justified and protected right to freely communicate with its counsel and in return demand its counsel's loyalty.

No allegations are made as to what information Lieben, Dahlk possessed as a result of the prior relationship with Fitzgerald, Brown which would be of assistance to the plaintiffs in the underlying litigation and to the detriment of FirsTier.

T. Geoffrey Lieben, as previously stated, was the only Lieben, Dahlk attorney associated with Fitzgerald, Brown at the time of the probate of the Carroll estate or at the time during which the George annual report was prepared. Lieben testified via affidavit that he had not worked on the cases, had no

knowledge of self-dealing, had not discussed the matters with, or received information from, anyone at the Fitzgerald, Brown firm, and had not seen any of the files. In addition, Lieben had all of his timesheets from the period of December 1, 1971, through August 30, 1972, which disclosed no occasion on which he worked on any of the files involved.

All six of the transplanted Fitzgerald, Brown attorneys who remain at Lieben, Dahlk testified by affidavit, in summary, that to the best of their knowledge, they performed no legal work in connection with either the Carroll or George case, never discussed the cases with or received information about the cases from any person associated with the Fitzgerald, Brown law firm, and had not seen any of the files.

Charles Schorr testified that he was the Fitzgerald, Brown partner who represented ONB in the Carroll estate. He agreed that he could not remember if he knew at the time of the stock sale that ONC was the buyer. When asked if at any time anybody from ONB told him that ONC was going to buy or had in fact purchased the stock, he replied that he had "no recollection of any contact, seeking any advice prior to the tender as to whether it should or should not be made." Schorr also explained that in reviewing ONB's file, he saw no petition to the county court seeking the approval of the tender offer. Schorr testified that he had no recollection of whether Lieben ever worked on the Carroll file, nor did he have any records from which he could make that determination. He agreed that the timesheets, if available, would disclose that information. However, Schorr also said that under the policies and practices of Fitzgerald, Brown, if the firm were presented with the opportunity to represent the heirs of the Carroll estate in a claim against FirsTier, it could not do so.

Joseph Barmettler, who has been associated with the Fitzgerald, Brown firm since 1959 and is presently its senior partner, testified that any client of the firm, including ONB in these situations, would be considered a client of the whole firm and all the attorneys in it. He also said that except for an unusual case, all files of the firm would be available to anyone associated with the firm.

Robert Brown, who was an officer of ONB during the time

of the alleged self-dealing, testified by deposition that he did not recall any conversation with Schorr in 1970 and 1971 regarding the tender offers and that he never had any discussions with Schorr that Brown felt were confidential which he did not want disclosed to the various beneficiaries.

FirsTier has articulated the issue before this court as follows:

> Whether Nebraska law permits an attorney, having belonged to the firm which represented a client with regard to a transaction, to later prosecute a civil suit against that client with regard to the very same transaction and other substantially similar transactions, and argue, as part of the present representation, that the past representation was at best ineffective and at worst a fraud upon the Court?

Mandamus is a law action. It is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear legal right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of the law. *State ex rel. Scoular Prop. v. Bemis*, 242 Neb. 659, 496 N.W.2d 488 (1993); *State ex rel. Pederson v. Howell*, 239 Neb. 51, 474 N.W.2d 22 (1991).

To warrant the issuance of a peremptory writ of mandamus to compel the performance of a legal duty to act, (1) the duty must be imposed by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty to act must be clear. Mandamus lies only to enforce performance of a mandatory ministerial act or duty and is not available to control judicial discretion. The general rule is that an act is ministerial if there is an absolute duty to perform in a specified manner upon the existence of certain facts. *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990).

A court deciding a motion to disqualify counsel must balance several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes

on parties and the entire judicial process. *Lansing-Delaware Water District v. Oak Lane Park, Inc.*, 248 Kan. 563, 808 P.2d 1369 (1991). An attorney disqualification motion, seeking to protect the use of confidences and secrets against a former client, requires the balancing of the first client's right to preserve its confidences against a second client's right to the counsel of its own choosing, but preservation of client confidences is given greater weight in that balancing. *Donohoe v. Consolidated Operating & Production Corp.*, 691 F. Supp. 109 (N.D. Ill. 1988).

In *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. at 993, 458 N.W.2d at 253, this court stated:

> [W]hen an attorney who was intimately involved with the particular litigation, and who has obtained confidential information pertinent to that litigation, terminates the relationship and becomes associated with a firm which is representing an adverse party in the same litigation, there arises an irrebuttable presumption of shared confidences, and the entire firm must be disqualified from further representation. This rule is consistent with Canons 4, 5, and 9 and DR 5-105(D) of the Code of Professional Responsibility, *Baker v. Farnsworth*, 117 Neb. 504, 221 N.W. 17 (1928), and *Federal Trust Co. v. Damron*, 124 Neb. 655, 247 N.W. 589 (1933). Through this rule the court, the parties, and the public can be assured that client confidences will be secure and will not pass, intentionally or inadvertently, from one party to an opposing party in the same litigation.

This court also cited the following language:

> We also note the decision in *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983). In that case an entire law firm changed sides and, with the assistance of another firm acting as trial counsel, began to represent an adverse party in litigation which was substantially related to the former representation. The court stated at 1267: "There is an exception [to disqualification] for the case where a member or associate of a law firm (or government legal department) changes jobs, and later he or his new firm is retained by an adversary of a client in his

former firm. In such a case, even if there is a substantial relationship between the two matters, the lawyer can avoid disqualification by showing that effective measures were taken to prevent confidences from being received by whichever lawyers in the new firm are handling the new matter. [Citations omitted.] The exception is inapplicable here; the firm itself changed sides."

The court also specifically rejected the use of Chinese walls in cases where the firm switches sides: "[A] law firm is not permitted to switch sides if its former representation was substantially related to its new representation, no matter what screens it sets up." *Id.* at 1268. Cf. *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983). Additionally, the court indicated that where a firm switches sides, Canon 9 alone would be the basis for a strict rule of disqualification: "While 'appearance of impropriety' as a principle of professional ethics invites and maybe has undergone uncritical expansion because of its vague and open-ended character, in this case it has meaning and weight. For a law firm to represent one client today, and the client's adversary tomorrow in a closely related matter, creates an unsavory appearance of conflict of interest that is difficult to dispel in the eyes of the lay public—or for that matter the bench and bar—by the filing of affidavits, difficult to verify objectively, denying that improper communication has taken place or will take place between the lawyers in the firm handling the two sides. Clients will not repose confidences in lawyers whom they distrust and will not trust firms that switch sides as nimbly as Schwartz & Freeman." 708 F.2d at 1269.

*State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. at 994-95, 458 N.W.2d at 253-54.

In *Brown v. Dist. of Col. Bd. of Zoning Adj.*, 486 A.2d 37 (D.C. App. 1984), the Court of Appeals for the District of Columbia held that when a law firm has provided representation in the first of two related matters, and an individual attorney who has since left the law firm is representing a party (in *Brown*, the government) in the second matter adverse to his former firm's client in the first matter,

disqualification will be required *unless* the attorney clearly shows that while at the firm, he did not work on the case and was not otherwise in a position to gain access to confidential information related to the first matter. The "substantially related" test originated in *T. C. & Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265 (S.D.N.Y. 1953), *aff'd* 216 F.2d 920 (2d Cir. 1954). In defining "substantially related," the court looked at whether counsel may have received confidential information from the former client that could be used against it in the subsequent representation.

In *Berg v. Marine Trust Co., N.A.*, 141 Wis. 2d 878, 416 N.W.2d 643 (Wis. App. 1987), the Wisconsin Court of Appeals found irrelevant to its determination the fact that defendant's attorney was not involved in earlier representation of the plaintiff and that the former partner who had previously represented plaintiff was no longer with the firm. The court found generally that defendant's attorney should be disqualified due to the representations' being substantially related and that plaintiff was entitled to insist on protection of confidences. The court did, however, create a default mechanism by which an attorney could avoid disqualification by showing that effective measures were taken to prevent the former client's confidences from being shared by the attorneys in the new firm in handling the new matter.

The Kansas Supreme Court has stated, in adherence to the American Bar Association's Model Rules of Professional Conduct 1.10, that an attorney is not subject to disqualification merely because of that attorney's association with another attorney who represents a client, but, rather, that the attorney must have acquired confidential and material information before being excluded. However, once the attorney is deemed to have acquired such information, representation by other members of the attorney's firm is barred, as well as representation by the "tainted" attorney. *Lansing-Delaware Water District v. Oak Lane Park, Inc.*, 248 Kan. 563, 808 P.2d 1369 (1991).

In *Donohoe v. Consolidated Operating & Production Corp.*, 691 F. Supp. 109, 118 (N.D. Ill. 1988), the court stated:

Both the substantial relationship test and the series of

> rebuttable presumptions that it spawns represent our Court of Appeals' attempt to balance the first client's right to preserve its confidences against the second client's right to counsel of its own choosing. [Citation omitted.] Preservation of client confidences has quite properly been given the greater weight in that balancing.

As is quite apparent, many courts have struggled with this problem. Although not specifically mentioned in the cases cited above, a very real and critical consideration is the perception that the public has of the legal profession generally. It is difficult to explain to an individual client how an attorney who was once associated with a firm can leave that firm and now bring suit against that client involving the same or substantially similar subject matter formerly handled by his or her prior firm. Resort to affidavits stating that "I didn't look at the file" or asserting the existence of Chinese walls are of little consolation to that client and do little or nothing to erase the appearance of impropriety. Although the record does not disclose what information the former members of the Fitzgerald, Brown firm possessed, nothing has been shown in the record which demonstrates that the structure of either law firm is such that it is unlikely that any attorney now or formerly associated with Fitzgerald, Brown could have had access to a client's secret. See *id*.

To avoid the necessity of agonizing over this type of decision, to aid the bar in its coping with situations such as this, to properly preserve not only the actual existence, but also the appearance, of propriety, and to eliminate as nearly as possible unnecessary and unwarranted criticism of the legal profession, we find it necessary to adopt a "bright line" rule. We now hold that an attorney must avoid the present representation of a cause against a client of a law firm with which he or she was formerly associated, and which cause involves a subject matter which is the same as or substantially related to that handled by the former firm while the present attorney was associated with that firm.

Application of this rule to the present controversy shows that the representation by Lieben, Dahlk of these causes of action against FirsTier runs head-on into the prohibition of that rule.

Accordingly, we find that the respondents had no alternative but to disqualify Lieben, Dahlk, and as their duty to do so is one imposed by law, which duty existed at the time the writ of mandamus was applied for, and their duty to act was clear, such writ must issue. Therefore, we direct that a peremptory writ of mandamus issue, directing the respondents as judges of the district court for Douglas County to disqualify Lieben, Dahlk from further representation of the plaintiffs in the litigations captioned "Samuel C. Carroll and Joan C. Nellson vs. FirsTier Financial Inc. and FirsTier Bank, N. A. Omaha," Douglas County District Court, docket 905, page 801, and "Billie Pepper Trachtenbarg, Jean Pepper Horen, Linda Priesman Smith and Steven [P]riesman vs. FirsTier Financial Inc. and FirsTier Bank N. A. Omaha," Douglas County District Court, docket 905, page 780.

PEREMPTORY WRIT ISSUED.