STATE OF NEBRASKA EX REL. WILLIAM A. WIELAND, RELATOR, V.
ALLEN J. BEERMANN, SECRETARY OF STATE OF THE STATE OF
NEBRASKA, RESPONDENT.
523 N.W.2d 518

Filed November 4, 1994.    No. S-94-897.

Denzel R. Busick, of Luebs, Leininger, Smith, Busick & Johnson, for relator.

Don Stenberg, Attorney General, and Dale A. Comer for respondent.

Hastings, C.J., White, Caporale, Fahrnbruch, Lanphier, and Wright, JJ., and Boslaugh, J., Retired.

Per Curiam.

Relator, William A. Wieland, in this original action seeks a writ of mandamus compelling respondent, Allen J. Beermann, the Secretary of State of the State of Nebraska, to remove proposed Legislative Resolutions 2CA, 29CA, 277CA, 15CA, and 293CA from the November 8, 1994, general election ballot. Wieland alleges in his first cause of action that Beermann accepted the explanatory statements which describe the proposed constitutional amendments after the statutory filing deadline, and thus must be compelled to remove the proposals from the ballot. We grant the petition and hereby order Beermann to withdraw the proposed constitutional amendments listed above.

The facts of this case are not in dispute. Wieland and Beermann stipulate that the explanatory statements were delivered to Beermann's office by the Executive Board of the Legislative Council of the Nebraska Legislature on July 8, 1994. Neb. Rev. Stat. § 32-707.01 (Reissue 1993) provides in relevant part:

> When any proposal is placed on the ballot for a vote of the electorate of the entire state, submitted by the Legislature a statement, in clear, concise language, explaining the effect of a vote for and a vote against the proposal shall be printed immediately preceding the ballot title. Such statement . . . shall be prepared by the Executive

Board of the Legislative Council and submitted to the Secretary of State *not less than four months prior to the general election* for certification to the county clerks and election commissioners along with the ballot titles.

(Emphasis supplied.) Wieland and Beermann disagree on whether the July 8 submission of the explanatory statements meets the deadline imposed by the Legislature in § 32-707.01.

At the heart of this action are two issues: (1) whether the explanatory statements were filed before the statutory deadline and (2) if the statements were not filed on time, whether a writ of mandamus is the proper remedy to compel Beermann to withdraw the proposals from the November 8 election ballot. We shall discuss each issue in order.

To determine whether the explanatory statements were timely filed, we must first ascertain the statutory deadline. It is clear that § 32-707.01 sets the amount of time that must intervene between the filing day and the election. At issue is how to apply the requirement of § 32-707.01 that the explanatory statements be submitted to the Secretary of State "not less than four months prior to the general election."

We have consistently held that the general rules governing statutory construction and interpretation provide that in the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; this court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994); *State on behalf of Matchett v. Dunkle*, 244 Neb. 639, 508 N.W.2d 580 (1993); *Malzahn v. Transit Authority*, 244 Neb. 425, 507 N.W.2d 289 (1993).

Section 32-707.01 establishes the time within which the filing must be made. The statutory language clearly requires that no less than 4 entire months must intervene between the date the explanatory statements are filed and election day. "Prior to" means before and cannot include the terminal date. The time period to be computed must necessarily conclude before the election day, which commences at 12:01 a.m. on November 8. Thus, the election day itself cannot be considered. The 4-month period must conclude no later than November 7.

We must now look to statutory and case law to determine how to compute that 4-month period. Both Wieland and Beermann submit that Neb. Rev. Stat. § 25-2221 (Reissue 1989), which is generally used in the computation of time, controls the method of computing the last possible filing date in this case. We agree.

Section 25-2221 and its predecessors have long been applied by this court not only to matters in litigation, but also to statutes. *Ruan Transport Corp. v. Peake, Inc.*, 163 Neb. 319, 79 N.W.2d 575 (1956); *State ex rel. Smith v. Nebraska Liquor Control Commission*, 152 Neb. 676, 42 N.W.2d 297 (1950); *Wilson & Co. v. Otoe County*, 140 Neb. 518, 300 N.W. 415 (1941); *McGinn v. State*, 46 Neb. 427, 65 N.W. 46 (1895). However, since our last decision holding that § 25-2221 applied to statutes, it has been amended.

Section 25-2221 now provides, in relevant part, that "the period of time within which an act is to be done *in any action or proceeding* shall be computed by excluding the day of the act . . . after which the designated period of time begins to run. The last day of the period so computed shall be included . . . ." (Emphasis supplied.) Additionally, since *Ruan Transport Corp., supra*, Neb. Rev. Stat. §§ 25-520.01 to 25-520.03 (Reissue 1989) have been enacted. Section 25-520.02 defines the term "action or proceeding" to mean "all actions and proceedings in any court and any action or proceeding before the governing bodies of municipal corporations, public corporations, and political subdivisions for the equalization of special assessments or assessing the cost of any public improvement." Although § 25-520.02 provides a definition of the term "action or proceeding," the use of that definition is limited in application by § 25-520.03. Section 25-520.03 states that § 25-520.02 applies to "parties authorized by law to give notice by publication." Section 25-520.02 has never been applied in any other circumstance.

The phrase "in any action or proceeding" does not preclude the use of § 25-2221 in this matter. Although the term "action or proceeding" generally refers to business before a court or judicial officer, the term is not restricted in application to those actions which occur within the walls of a courtroom.

> A statutory rule for the computation of time is usually construed as a general provision relating to all acts required and permitted by law, unless an intention to the contrary affirmatively appears or a different construction seems imperative, and it may be applied in matters of practice as well as in the construction of statutes . . . .

86 C.J.S. *Time* § 8 at 830 (1954).

Thus, § 25-2221 controls the computation of time in this case. We therefore must exclude the filing date in computing the filing deadline and include the last day of the period.

Unless the context shows otherwise, the word "month" means calendar month. Neb. Rev. Stat. § 49-801(13) (Reissue 1993). See, also, *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990); *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981). A calendar month is a period terminating with the day of the succeeding month numerically corresponding to the day of its beginning, less one. *Oldfield, supra*; *Jones, supra*. If there be no corresponding day of the succeeding month, it terminates with the last day thereof. *Ruan Transport Corp., supra.*

Under our statutorily mandated method for counting months, the last date for a filing which would be "not less than four months prior to" November 8 would be July 7.

It is undisputed that the explanatory statements were filed on July 8. Using § 49-801(13) and § 25-2221 to compute the time established by § 32-707.01, we determine that the filing deadline was not met. Section 25-2221 requires us to discount the filing day when calculating the 4-month period. For a filing of July 8, we begin computing the 4-month period on July 9. Applying our general definition of the term "calendar month," we determine that a 4-month period beginning July 9 ends on November 8. See *Ruan Transport Corp., supra* (applying the general definition of the term "calendar month" in order to calculate time under a previous version of § 25-2221). That is not prior to the election. We therefore hold that the explanatory statements submitted to Beermann on July 8 were 1 day late. The Legislature implemented the time deadline; it is not the office of this court to extend that deadline or to forgive the Legislature's failure to abide by its own statutorily mandated time limitation.

Beermann contends that *State ex rel. Morris v. Marsh*, 183 Neb. 521, 162 N.W.2d 262 (1968), is analogous to the case now before this court. In *Morris*, a mandamus action was filed to require the Secretary of State to accept and file an initiative petition seeking a constitutional amendment prohibiting the State of Nebraska from levying a state income tax. On July 3, 1968, petitions bearing the signatures of 57,521 electors were filed with the Secretary of State, and on July 5, additional petition forms were filed. The Secretary of State in *Morris* determined that the filing of additional petition forms on July 5 was untimely under Neb. Const. art. III, § 2, which required that the petition " 'shall be filed with the Secretary of State, who shall submit the measure . . . at the first general election held *not less than four months after such petition shall have been filed.'* " (Emphasis supplied.) 183 Neb. at 525, 162 N.W.2d at 266. The district court in *Morris* found the July 5 submission timely for the November 5 election of that year, and this court affirmed. We held in *Morris* that

[t]here is little or no dispute that in terms of a full day and an exact date, November 5 is a date exactly 4 months after July 5. The [Secretary of State] attempts to read the language of the Constitution as requiring the election to be held *more* than 4 months after the filing of the petition, instead of "not *less* than 4 months [after the filing of the petition]." . . . The district court's computation was correct.

We hold that a requirement that an initiated measure be submitted at the first general election held not less than 4 months after filing of the petition is satisfied by a filing on July 5 for a general election to be held November 5.

(Emphasis in *Morris*.) 183 Neb. at 526-27, 162 N.W.2d at 266-67.

*Morris* is distinguishable from the case now before us. First, the language of the time deadlines differs in each case. Section 32-707.01 requires the explanatory statements to be submitted to the Secretary of State "not less than four months *prior to* the general election," whereas article III, § 2, in *Morris* required the petition to "be filed with the Secretary of State, who shall submit the measure . . . at the first general election held *not less*

*than 4 months after* such petition shall have been filed." Moreover, the time requirement in *Morris* was set by the Nebraska Constitution; thus, general common-law computation of time applied. Here, the time requirement is statutory. Hence, § 25-2221 is controlling and *Morris* is inapplicable.

However, even if *Morris* were applicable, the filing of the explanatory statements would still be untimely. In *Morris*, we said, "November 5 is a date exactly 4 months after July 5." Using that reasoning, November 7 is not exactly 4 months after July 8.

Having found that the explanatory statements were submitted after the deadline that the Legislature imposed upon itself in § 32-707.01, we now turn to the issue of whether a writ of mandamus is the proper avenue by which to remedy the wrong. We have long held that mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act in question, and (3) there is no other plain and adequate remedy available in the ordinary course of the law. *State ex rel. Creighton Univ. v. Hickman*, 245 Neb. 247, 512 N.W.2d 374 (1994). In order for this court to order Beermann by writ of mandamus to withdraw the proposed constitutional amendments, we must find that (1) the act of withdrawing the proposals by Beermann is a purely ministerial act or duty, (2) Wieland has a clear right to the relief he seeks, (3) Beermann has a clear duty to remove the proposed constitutional amendments from the ballot, and (4) there is no other plain and adequate remedy available.

The general rule is that an act or duty is ministerial if there is an absolute duty to perform in a specified manner upon the existence of certain facts. *State ex rel. FirsTier Bank v. Buckley*, 244 Neb. 36, 503 N.W.2d 838 (1993). See, also, *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990). A seemingly discretionary decision to act may, in fact, be purely ministerial. See, e.g., *State ex rel. Creighton Univ. v.*

*Smith*, 217 Neb. 682, 353 N.W.2d 267 (1984) (holding that administrative decisions based on a mistaken view of the law are ultimately not discretionary and that by mandamus a court can correct the mistake and compel the proper application of the law, thereby converting an otherwise discretionary act into a purely ministerial duty); *State ex rel. Creighton Univ. v. Hickman, supra* (holding that previous case law and the Code of Professional Responsibility imposed a clear duty on the judge to disqualify a law firm even though a judge's application of particular facts to the law would seem discretionary); *State ex rel. Hilt Truck Line v. Peterson*, 215 Neb. 81, 337 N.W.2d 133 (1983) (director of the Department of Motor Vehicles ordered by writ of mandamus to issue Hilt Truck Line a license even though he first had to ensure that a certain set of facts existed before it was his clear duty to act). For example, in *State ex rel. Morris v. Marsh*, 183 Neb. 521, 162 N.W.2d 262 (1968), the Secretary of State made a determination that the number of valid signatures was insufficient based on the statute. The court affirmed the mandamus action and the Secretary of State was ordered to place the initiative petition on the ballot. Legal or factual determinations made at the outset of the inquiry do not make the decision to act discretionary. The requirement to act upon certain factual findings is still ministerial if there is a requirement to act at all.

We have previously held that the Secretary of State's duties and responsibilities when determining the sufficiency of the number of signatures collected on an initiative petition are ministerial in nature. *State ex rel. Labedz v. Beermann*, 229 Neb. 657, 428 N.W.2d 608 (1988). The Secretary of State does not rely on evidence heard before a tribunal to determine the validity of the petition signatures, but, rather, relies on his own records in reaching a determination of validity. *Id.* See, also, *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18 (1984). Likewise, we find that Beermann's determination under § 32-707.01 that explanatory statements may or may not be timely filed is ministerial in nature and not discretionary. Where the duty of a public official is mandatory and not discretionary, mandamus is available where the responsible officer has refused to carry out his statutory obligation. *State ex rel. Goetz*

*v. Lundak*, 199 Neb. 585, 260 N.W.2d 589 (1977). Beermann has the ministerial duty to act upon his findings: to wit, he must withhold proposals if they were not filed within the deadline set by the statute. There is no discretion in this determination, for if the explanatory statements were filed on time, then they can be certified for the election; if they were not filed on time, then they cannot be certified for the election.

Neb. Rev. Stat. § 32-1051 (Reissue 1993) provides that "[t]he Secretary of State shall decide disputed points of election law, which decisions shall have the force of law until changed by the courts." Neb. Rev. Stat. § 32-1052 (Reissue 1993) provides:

In addition to any other duties prescribed by law, the Secretary of State shall have the following duties:

(1) To supervise the conduct of primary and general elections in this state;

(2) To enforce the provisions of Chapter 32; and

(3) With the assistance and advice of the Attorney General, to make uniform interpretations of Chapter 32.

Beermann thus has the clear duty by statute to decide disputed points of election law and to supervise the conduct of general elections. In this case, the disputed point of election law is whether the explanatory statements were filed on time. Supervising the conduct of elections requires Beermann to ensure that any proposals are properly submitted to his office. We find that Beermann had a clear duty under §§ 32-707.01 and 32-1051 to determine whether the proposals met the time deadline; to withhold the proposals, since they did not meet the required time deadline under § 32-707.01; and to supervise the conduct of the general election to be held on November 8, which includes withdrawing the invalidly submitted proposals under § 32-1052.

Wieland has a clear right to the relief he seeks, since we found that Beermann had the statutory duty to perform the ministerial act of withdrawing the proposed constitutional amendments. Wieland also has no other remedy available to him in this action. In concluding that (1) Beermann's duty to remove the untimely submitted explanatory statements from the November 8 election ballot is ministerial in nature, (2) Wieland has a clear right to the relief sought, (3) Beermann has

a clear statutory duty to remove the proposals, and (4) no other adequate remedy exists, we therefore find that mandamus is the proper action by which to remedy the invalid submission of the explanatory statements in this case.

Wieland challenges the constitutionality of proposed Legislative Resolution 2CA in his second cause of action. This issue will not be addressed, since this court will not pass upon the constitutionality of legislation absent a need to do so in order to properly dispose of an action. See *State ex rel. Labedz, supra.*

Having found that the explanatory statements for proposed Legislative Resolutions 2CA, 29CA, 277CA, 15CA, and 293CA were submitted after the deadline imposed by § 32-707.01, and having found that a writ of mandamus is the proper remedy in this case, we hereby order Beermann to remove the proposals listed above from the November 8 general election.

PEREMPTORY WRIT OF MANDAMUS ISSUED.

WHITE, J., concurring in part, and in part dissenting.

I agree with the dissent of Justice Wright and its conclusion that the explanatory statements were timely delivered. However, I agree with the majority that Legislative Resolution 2CA should nevertheless not be submitted to the electorate at the November 8, 1994, general election for the reasons following:

Neb. Rev. Stat. § 32-707.01 (Reissue 1993) requires that the Legislature submit a statement explaining a vote for and a vote against the proposed amendment, and that the explanatory statement must be worded so as not to be intentionally argumentative or likely to create prejudice either for or against the proposal. L.R. 2CA proposes to amend Neb. Const. art I, § 13, which states that "[a]ll courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay."

L.R. 2CA adds new language to the very end of the above section, stating that "except that the Legislature may provide for the enforcement of mediation, binding arbitration agreements, and other forms of dispute resolution which are

entered into voluntarily and which are not revocable other than upon such grounds as exist at law or in equity for the revocation of any contract."

The explanatory statement for L.R. 2CA submitted by the Legislature states as follows:

A vote FOR this proposal would add a provision authorizing the Legislature to provide for the enforcement of mediation, binding arbitration agreements, and other forms of dispute resolution voluntarily entered into, and which are not revocable other than upon such grounds as exist at law or in equity for the revocation of any contract.

A vote AGAINST this proposal would not add the new language referred to above authorizing the Legislature to enforce other forms of dispute resolution, including binding arbitration agreements voluntarily entered into.

The explanatory statement recites the exact language of the amendment itself and does not explain the effect a vote for or against the amendment will have, as required by § 32-707.01. The explanatory statement insufficiently conveys the consequences of a vote for or against L.R. 2CA. It does not explain that if a voter casts a vote for an amendment allowing binding arbitration and the resolution passes, the voter effectively waives the right to a jury trial as guaranteed by Neb. Const. art. I, § 6, and the right to appeal as guaranteed by Neb. Const. art. I, § 24. The voter also waives the protection and use of Nebraska's rules of evidence and rules of civil procedure.

The failure of L.R. 2CA to adequately advise voters of the effect that a vote for the passage of the amendment will have on their constitutional rights necessarily results in an explanatory statement that does not fairly present the consequences of the vote, in violation of § 32-707.01.

The voting public is entitled to be told that a vote in favor of a proposed amendment to the state's Constitution allows the elimination of the protection afforded by the judicial branch of government in the resolution of civil disputes arising out of a contract where an arbitration provision is inserted. A waiver of constitutional rights should not be inferred from a silent record.

This court as a guardian of this state's Constitution should not permit the surrender of constitutional rights without

assuring itself that those rights are surrendered voluntarily, knowingly, and intelligently.

HASTINGS, C.J., and WRIGHT, J., join in this concurrence and dissent.

WRIGHT, J., dissenting.

The majority holds that the filing of explanatory statements on July 8, 1994, for an election to be held on November 8, 1994, was not timely. I respectfully dissent. In my opinion, the majority has adopted a strained construction of Neb. Rev. Stat. § 32-707.01 (Reissue 1993), a construction which prevents the inclusion of the legislative resolutions on the November 8 ballot.

It is undisputed that the word "month" means calendar month unless the context is shown to intend otherwise. See Neb. Rev. Stat. § 49-801(13) (Reissue 1993). Thus, the sole issue is whether July 8 is 4 calendar months prior to November 8. The term "calendar month" was defined in *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990). A calendar month denotes a period terminating with the day of the succeeding month numerically corresponding to the day of its beginning, less one. If there is no corresponding day of the succeeding month, the calendar month terminates with the last day thereof. For example, the calendar month beginning January 1 denotes the period terminating with the day of February 1, less one, or January 31. Thus, a filing on January 1 is 1 calendar month prior to February 1.

The majority concludes that Neb. Rev. Stat. § 25-2221 (Reissue 1989) applies in determining the filing deadline. I disagree. Section 25-2221 does not apply in this situation. Time computation under § 25-2221 relates only to the "period of time within which an act is to be done in any *action or proceeding* . . . ." (Emphasis supplied.) The situation in the case at bar is not an action or proceeding as those terms are defined in Neb. Rev. Stat. § 25-520.02 (Reissue 1989), which states: "The term action or proceeding means all actions and proceedings *in any court* and any action or proceeding *before the governing bodies of municipal corporations, public corporations, and political subdivisions for the equalization of*

*special assessments or assessing the cost of any public improvement*." (Emphasis supplied.) The act of submitting explanatory statements, as required by § 32-707.01, is not an action or proceeding, but is a purely legislative act.

The majority finds that § 25-520.02 does not define an action or proceeding for purposes of § 25-2221, but that § 25-520.02 is limited by Neb. Rev. Stat. § 25-520.03 (Reissue 1989). The Legislature, in the very section relied on by the majority, states that the definition of the phrase "action or proceeding" is one of statewide concern. The majority does not consider Neb. Rev. Stat. § 25-522 (Reissue 1989), which states that it is the right of any plaintiff or petitioner, when necessary, to obtain service by publication. Read in the context of § 25-522, the second sentence of § 25-520.03 merely affirms that all parties who may sue and be sued shall be given the benefit of service by publication. It does not restrict the scope of § 25-520.02. The definition of the phrase "action or proceeding" contained in § 25-520.02 applies to § 25-2221.

I also believe that § 25-2221 does not apply because under § 32-707.01, the computation of time operates retroactively from election day, while under § 25-2221, the computation operates prospectively from the date of an act. In my opinion, the two methods of computing time are irreconcilable.

As § 25-2221 is applied to actions and proceedings, the day of the past act is excluded. Section 25-2221 computes a deadline for filing from the date of a previous act. For example, the time for filing a notice of appeal, which must be filed within 30 days of a final order, would not include the date of the final order as a part of the 30 days for filing. The counting to determine the end of the 30-day period begins with the day after the previous act.

In the case at bar, § 32-707.01 requires the Legislature to file the statements "not less than four months prior to the general election." The counting is based upon a date certain in the future. Section 32-707.01 does not mandate excluding the date the statements are filed when computing the 4-month period. A statement filed on July 8 is not filed less than 4 months prior to November 8. November 8 is the date in the future which determines the last date on which the statements can be filed.

November 8 is excluded because the filing must be prior to that date, but in my opinion, there is no rational basis for excluding July 8, the date the statements were filed.

A similar question was addressed by the Arkansas Supreme Court in *Pafford v. Hall, Secretary of State*, 217 Ark. 734, 233 S.W.2d 72 (1950). The Arkansas Constitution directed that the petition be filed " 'not less than four months' " before the election. *Id*. at 739, 233 S.W.2d at 74. The election was scheduled to be held on November 7, and it was argued that the filing of the petition on July 7 was 1 day too late. The court rejected that argument and stated:

> That result can be reached only by excluding both the first and the last day, and would involve saying that January 1 is less than a month before February 1. The law does not care about fractions of a day, however, and we have consistently held that only one of the two days need be excluded.

*Id*. I agree with the Arkansas court's reasoning. A filing on January 1 is not less than a month prior to February 1. A filing on July 8 is not less than 4 months prior to November 8.

In the case at bar, § 32-707.01 uses as its reference point a date certain in the future, the day of the election, November 8, 1994. The statute requires filing of explanatory statements 4 months prior to the day of the election. For purposes of this statute, the first month was July 8 to August 7, 1994; the second month was August 8 to September 7; the third month was September 8 to October 7; and the fourth month was October 8 to November 7. November 7 is the day before election day. Thus, July 8, 1994, was the last possible day on which the explanatory statements could have been filed. In my opinion, the explanatory statements were timely filed with the Secretary of State.

HASTINGS, C.J., and WHITE, J., join in this dissent.